UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.:  9:22-cv-81576

VPR BRANDS, LP,

  Plaintiff,

v.

SHENZHEN WEIBOLI TECHNOLOGY CO.
LTD. (ELF BAR), YLSN DISTRIBUTION
LLC, ECTO WORLD LLC, SAFA GOODS
LLC, D&A DISTRIBUTION LLC,
UNISHOW (U.S.A.), INC., SV3 LLC, AND
KINGDOM VAPOR INC.,

  Defendants.
_____

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff VPR BRANDS, LP, by and through its undersigned counsel, pursuant to 15 U.S. Code § 1116(a), Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a), hereby moves this Honorable Court for a preliminary injunction against all Defendants, and in support thereof states as follows:

**I.  INTRODUCTION**

For more than 12 years, VPR has been building its valuable intellectual property portfolio due to its extensive experience in the e-cigarette industry. In 2016, VPR purchased the assets of Vapor Corp. and grew Vapor Corp. into one of the largest and most recognized electronic cigarette companies at the time. VPR owns the U.S. Patent Number 8,205,622 entitled "Electronic Cigarette." VPR operates under a number of brands, including the one at issue in this

lawsuit, the **ELF** Mark. VPR currently markets two product lines under the ELF Brand: (1) the Elf Original Auto Draw Conceal Kit products and (2) e-cigarette batteries.

Recently, VPR became aware that Defendant SHENZHEN WEIBOLI TECHNOLOGY CO. LTD., ("Weiboli")  were selling a disposable e-cigarette product being marketed and sold in the United States using the ELF Mark, called ELF BAR or ELFBAR (hereinafter "ELFBAR"). Defendants' subsequent use of the confusingly similar marks is threating VPR's goodwill and reputation. In fact, Defendants were on notice that its ELFBAR branded products were confusingly similar to VPR's ELF Mark when the USPTO refused to register its ELFBAR trademark application on July 19, 2021. Despite the likelihood of confusion refusion, and being put on notice by the USPTO that ELFBAR is likely to cause consumer confusion with VPR's ELF Mark, Defendants willfully moved forward with its plans to market and sell electronic cigarette devices using the ELFBAR mark throughout the United States. To prevent the confusion and irreparable harm that is inevitable, VPR respectfully requests that the Court enter a preliminary injunction against the Defendants.

## II.   STATEMENT OF FACTS

### a.   VPR Brands, LP

VPR Brands, LP is a Delaware limited partnership with its principal place of business in this judicial district, located at 1141 Sawgrass Corporate Parkway, Sunrise, FL 33323 (Frija Decl. ¶ 5). Kevin Frija is the Chief Executive Officer of VPR. (Frija Decl. ¶ 1). VPR is a market leader and pioneer engaged in product development for the vaping market, including e-liquids, vaporizers, and electronic cigarettes (also known as e-cigarettes) which are devices that deliver nicotine and or cannabis through atomization or vaping, and without smoke and other chemical constituents typically found in traditional products. (Frija Decl. ¶ 6). VPR is in the business of

creating, designing, and distributing innovative electronic cigarette technologies and other related technologies. VPR is also in the business of creating valuable e-cigarette brands. (Frija Decl. ¶ 7). VPR has been successful in building valuable intellectual property due to its extensive experience in the e-cigarette industry. Through Kevin Frija, VPR began working in this business in 2008 with Smoke51 which was one of the first electronic cigarette brands in the United States. In 2009, Frija became the President and Chief Executive Officer of Vapor Corp., one of the first U.S. importers and first publicly traded electronic cigarette companies. Frija helped grow Vapor Corp. into one of the largest and most recognized electronic cigarette companies at the time. In 2016, VPR purchased the assets of Vapor Corp. (Frija Decl. ¶¶ 8-9).

### b. VPR's Intellectual Property Rights

VPR owns all right, title and interest in U.S. Patent Number 8,205,622 (the '622 Patent) entitled "Electronic Cigarette." The '622 Patent discloses an electronic cigarette consisting of an electronic inhaler and an electronic atomizer. The electronic inhaler contains a rechargeable or non-rechargeable power source such as a battery, which supplies electric power to the electronic inhaler. In addition to the power source, the inhaler also includes an electric airflow sensor to detect air movement generated by a user's inhaling or puffing act. The sensor's role is to collect an airflow signal that triggers the electronic cigarette to supply electric power to the inhaler and atomizer connected through an electric connector. Inside the electronic atomizer are an electric connector, electric heating wire, liquid container, and atomizer cap with an air-puffing hole. The user inhales through the air puffing hole at an end of the electronic cigarette to create an air inflow, which triggers the atomization process that converts a solution to a gas emulating the smoking process. (Frija Decl. ¶ 10).

VPR owns the ELF trademark, U.S. Registration No. 5,486,616 to VPR for the ELF mark in International Class 34 for use in connection with "Electronic cigarette lighters; Electronic cigarettes; Smokeless cigarette vaporizer pipe." (the "ELF Mark" or "'616 Registration"), registered on June 5, 2018. (Frija Decl. ¶ 14). Beginning in 2017, VPR began marketing a line of electronic cigarettes and electronic cigarette accessories under the **ELF** brand name and logo. On November 24, 2017, VPR first used the ELF mark in commerce in connection with VPR's sale of electronic cigarettes and accessories. (Frija Decl. ¶ 11).

VPR currently markets two product lines under the ELF brand. One product line consists of the ELF Original Auto Draw Conceal Kit products. The ELF Original Auto Draw Conceal Kit is a reusable (non-disposable) bar-shaped e-cigarette featuring a buttonless design, high-capacity battery, and a high-end aluminum body in a variety of colors. The ELF Original Auto Draw Conceal Kit is compatible with all industry standard refillable 510 mouthpieces. (Frija Decl. ¶¶ 12-13). The other ELF product line consists of high-capacity e-cigarette batteries designed to be connected to industry standard refillable 510 mouthpieces. An example of products are shown below:



| ELF Original Auto Draw Conceal Kit | E-cigarette Batteries |

The ELF Mark is an arbitrary mark that had no significance in the electronic cigarette industry. Prior to VPR's use of the ELF mark, no other e-cigarette brand used the ELF mark for e-cigarettes or accessories. (Frija Decl. ¶ 15). VPR has continuously used the ELF Mark in commerce to distinguish its e-cigarette products and e-cigarette accessory products since 2017. (Frija Decl. ¶ 16). The ELF Mark is distinctive and signifies to the purchasing public that the products come from VPR and are of high quality goods and services. (Frija Decl. ¶ 17). VPR markets and sells its ELF e-cigarette products and e-cigarette accessory products on its publicly available website https://vprbrands.com/ and through retailers nationwide. (Frija Decl. ¶¶ 18-19).

VPR was the first to use the mark ELF in connection with ELF e-cigarette products and e-cigarette accessory products from other devices on the market. (Frija Decl. ¶ 20). VPR chose the arbitrary and unique ELF Mark to signify to its consumers its ELF e-cigarette products and e-cigarette accessory products from other devices on the market. (Frija Decl. ¶ 21). VPR continually and exclusively used the ELF Mark for its e-cigarette products to date. (Frija Decl. ¶ 22). VPR expended significant resources to market ELF e-cigarette produce and e-cigarette

accessory products to consumers. (Frija Decl. ¶ 23). VPR continually and exclusively used the ELF mark and expended significant resources in obtaining the mark with the USPTO as well as money, creativity, and promotional efforts to market the devices to consumers. VPR's ELF mark is widely recognized by consumers, including national distributors and retail customers. VPR's ELF mark signifies the highest industry standards. VPR's ELF Mark serves as an indication of origin, source, and quality for consumers and distributors of e-cigarette products and e-cigarette accessory products. (Frija Decl. ¶¶ 24-29).

VPR carefully monitors and controls the use of the ELF Mark to ensure that only the highest quality e-cigarette products and e-cigarette accessory products carry the ELF brand. (Frija Decl. ¶ 28). VPR has ever licensed the use of the ELF Mark to anyone for use with e-cigarette products or e-cigarette accessory products. (Frija Decl. ¶ 23).

    c. **Defendant's Infringement of the ELF Mark**

In May of 2022, VPR became aware of a disposable e-cigarette product being marketed and sold in the United States using the ELF Mark called ELF BAR or ELFBAR (hereinafter "ELFBAR"). (Frija Decl. ¶ 30). An image of the infringing product is shown below:



VPR attempted to investigate the source of the product but was unable initially to determine the parties responsible for the sale of the unauthorized ELFBAR disposable e-cigarettes. (Frija Decl. ¶ 31). Finally, after identifying several distributors of the ELFBAR, VPR was able to determine that the source of the product was SHENZHEN WEIBOLI TECHNOLOGY CO. LTD. ("Weiboli"). (Frija Decl. ¶ 32). Weiboli is using the ELF mark without consent, authorization, license, or permission. (Frija Decl. ¶ 33).

The name ELFBAR combines VPR's registered trademark ELF with the word "bar" that means a "substance formed into a regular narrow block," like a chocolate bar. The shape of the ELFBAR product is bar shaped. The shape of the ELF Original Auto Draw Conceal Kit product is also bar shaped. (Frija Decl. ¶ 34). In fact, as shown below, the ELFBAR product copied the shape of VPR's product:



The word "bar" is commonly used to refer to bar shaped e-cigarettes such as Geek Bar, Air Bar, and Puff Bar. As a result, the addition of the word "bar" added to "elf" fails to distinguish VPR's ELF e-cigarette products from Weiboli's ELFBAR product. (Frija Decl. ¶ 35). The Weiboli ELFBAR name is confusingly similar to Plaintiff's registered ELF mark as applied to e-cigarette products. (Frija Decl. ¶ 36). VPR does not and cannot monitor or control the quality and safety of Weiboli's ELFBAR devices. (Frija Decl. ¶ 37). In fact, the Weiboli ELFBAR device is a cheap, inferior disposable device that weighs significantly less and costs significantly less than VPR's ELF Original Auto Draw Conceal Kit. (Frija Decl. ¶ 38).

At least as early as July 19, 2021, Weiboli had knowledge of VPR's ELF Mark, and was on notice that Weiboli's ELFBAR products were causing confusion with VPR's ELF mark in the United States. (Frija Decl. ¶ 39). On December 31, 2020, Weiboli submitted an application with the USPTO to register the mark "ELFBAR." On July 19, 2021, the USPTO issued an Office Action rejecting Weiboli's ELFBAR application, under section 2(d), based on a likelihood of confusion with Plaintiff's ELF Mark. The Office Action stated, in part, "the marks are confusingly similar because applicant's mark ELFBAR creates an overall similar commercial impression with the registered mark ELF. Because the marks look and sound similar and create the same commercial impression, the marks are considered similar for likelihood of confusion purposes." (Frija Decl. ¶ 40; see Exhibit 2 to Frija's Declaration).

Weiboli did not respond to the July 19, 2021, Office Action, and its application to register the ELFBAR mark was abandoned as of January 20, 2022. (Frija Decl. ¶ 41). Despite the USPTO's refusal to register Weiboli's ELFBAR applicationbased on a likelihood of confusion, Weiboli entered the market in the U.S. with its infringing ELFBAR product. (Frija Decl. ¶ 42). Weiboli entered the market knowing that it was selling a product under a mark that was

confusingly similar to VPR's ELF Mark. (Frija Decl. ¶ 43). The Weiboli ELFBAR name is causing *actual* confusion among consumers, retailers and distributors of e-cigarettes in the United States. At least one national e-cigarette distributor contacted VPR under the mistaken belief that VPR was the source and origin of the ELFBAR product. (Frija Decl. ¶¶ 44-45).

The remaining defendants, SAFA GOODS LLC, YLSN DISTRIBUTION LLC, ECTO WORLD, LLC, D&A DISTRIBUTION LLC, UNISHOW (U.S.A.), INC., SV3 LLC, AND KINGDOM VAPOR INC., are wholesale distributors who offer ELFBAR branded products for sale to retailers throughout the United States and including in this judicial district. (DE 1 at 4-7). To prevent consumer confusion and irreparable harm that is inevitable, VPR respectfully requests that the Court enter a preliminary injunction against all of the Defendants from selling or offering to sell the ELFBAR products.

## III.   LEGAL ARGUMENT

To obtain a preliminary injunction, plaintiff must establish (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also YETI Coolers, LLC v. Individuals, Bus. Entities, & Unincorporated Ass'ns Identified on Schedule A*, 566 F. Supp. 3d 1333, 1340 (S.D. Fla. 2021). Plaintiff's evidence establishes all of the relevant factors.

### A. Probability of Success on the Merits of Plaintiff's Claims.
#### i. Plaintiff is Likely to Succeed on the Merits of its Federal Trademark Infringement and Unfair Competition Claims

To prevail on a trademark infringement claim under the Lanham Act, 15 U.S.C. § 1114, a plaintiff must show: (1) that its mark has priority; (2) that the defendant used the plaintiff's mark

in commerce; and (3) that defendant's use of the mark is likely to cause confusion among consumers. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). The same analysis applies to claims for federal false designation of origin and unfair competition. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991) ("[T]he same facts support a cause of action for unfair competition as for trademark infringement.") (citation omitted).

      a. <u>VPR Has Priority in the ELF Mark and Weibolo Has Used the Mark in Commerce.</u>

VPR owns the federal trademark registration for the ELF Mark. (Frija Decl. ¶ 14, Exhibit 1). Weiboli has never had the right or authority to use the ELF Mark. (Frija Decl. ¶ 32). VPR has used the ELF Mark in commerce since at least November 24, 2017. (Frija Decl. ¶ 11). In contrast, Weiboli's trademark application claims a date that it has used the ELFBAR mark in commerce since at least September 29, 2020. (Frija Decl. ¶ 40, Exhibit 2). Weiboli offers its products under the ELFBAR brand in the United States and sells its product on its website, establishing use in commerce. (Frija Decl. ¶ 43, Exhibit 2). Weiboli's use of the ELFBAR name comes three years too late. *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1080-81 (11th Cir. 2016) ("The party who first uses a mark in commerce is said to have priority over other users."). Moreover, the USPTO has rejected the registration of the ELFBAR mark finding that it was confusingly similar to Plaintiff's senior ELF mark. Therefore, the first two requirements for VPR's trademark infringement and unfair competition claims are met.

      ii. <u>A Likelihood of Confusion Exists</u>

Likelihood of confusion, the third factor, is established under a seven-factor test. *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1506 (11th Cir. 1985). These factors are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4)

similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. *See Safeway Store, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1164 (11th Cir. 1982). The seven factors are weighed and balanced; no single factor is dispositive. *Id.*

1. Strength of the Marks

In assessing the type of mark in an infringement claim, the court must determine the mark's strength. A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. *Lone Star Steakhouse and Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 362 (11th Cir. 1997). The stronger the mark, the greater the scope of protection accorded it. *Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). Trademarks are divided into four types: (1) fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

Here, VPR obtained a valid registration Certificate for the ELF mark. *See* 15 U.S.C. § 1057(b); 15 U.S.C. § 1115(a); *see also Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 n.3 (11th Cir. 2007) ("Registration establishes a rebuttable presumption that the marks are protectable or 'distinctive.'") (*citing* 15 U.S.C. § 1057(b)); *TracFone Wireless, Inc. v. Pak China Grp. Co. Ltd.*, 843 F.Supp. 2d 1284, 1294 (S.D. Fla. 2012) ("[T]he Eleventh Circuit strongly presumes registered marks to be valid.") (citing *Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1562 (11th Cir. 1991) and *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184-85 (5th Cir. 1980)). As such, there is no dispute that VPR's ELF Mark is protectable and distinctive.

The ELF Mark is also an arbitrary mark deserving of the greatest scope of trademark protection. The term ELF is arbitrary in the way that it had no significance in the electronic

cigarette industry, prior to VPR's use of the ELF Mark. (Frija Decl. ¶ 15). VPR chose the arbitrary and unique ELF Mark to signify to its consumers to distinguish its products and e-cigarette accessory products from other electronic cigarette devices on the market. (Frija Decl. ¶ 21). Therefore, the strength of the arbitrary ELF Mark weighs in favor of VPR.

2. Similarity of the Marks

Likelihood of confusion is greater when an infringer uses the exact trademark. *Turner Greenberg Assocs. V. C & C Imps.*, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004). Both VPR and Weiboli use the term ELF to identify e-cigarette products. Weiboli's addition of the word "bar" is irrelevant because It is descriptive of the shape of the product. (Frija"Decl. ¶ 34). Moreover, the word "bar" is commonly used in the e-cigarette industry to refer to its bar-shaped e-cigarettes. (Frija Decl. ¶ 35). As a result, the addition of the word "bar" added to "elf" fails to distinguish VPR's ELF e-cigarette products from Weiboli's ELFBAR product.

Furthermore, consumers are generally more inclined to focus on the first word, prefix, or syllable in any trademark or service mark. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1372 (Fed. Cir. 2005) (finding similarity between VEUVE ROYALE and two VEUVE CLICQUOT marks in part because "VEUVE . . . remains a 'prominent feature' as the first word in the mark and the first word to appear on the label"). Therefore, the similarity of the marks weighs in favor of VPR.

3. Similarity of the Goods

"The greater the similarity between the products and services, the greater the likelihood of confusion." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983). Weiboli is selling e-cigarette products that is sold in the same bar shape as VPR's products.

(Frija Decl. ¶ 32, 34). Weiboli's product appears is virtually identical to VPR's e-cigarette product. Standing alone, this similarity can be held sufficient to establish a likelihood of confusion. *See John H. Harland Co.,* 711 F.2d at 976. The goods sold by both companies are electronic cigarettes, therefore, this factor weighs in favor of VPR.

### 4. Similarity of the Sales Methods

Convergent marketing channels increase the likelihood of confusion. *See Turner Greenberg Assocs.*, 320 F. Supp. 2d at 1332. Both Plaintiff and Defendants sell their products using at least one of the same marketing channels, the Internet, in the same geographical distribution areas within the United States. (Frija Decl. ¶¶ 18, 43). The sales channels overlap. The consumers are the same. Therefore, the similarity of the sales methods weighs in favor of VPR.

### 5. Similarity of Advertising Media

This factor looks to each party's method of advertising. See *John H. Harland Co.,* 711 F.2d at 976. "[T]he standard is whether there is likely to be significant enough overlap in the readership of the publications in which the parties advertise that a possibility of confusion could result." *Frehling Enterprises, Inc. v. In"l Select Grp., Inc.*, 192 F.3d 1330, 1339–40 (11th Cir. 1999) citing *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1166 (11th Cir.1982).

Here, both parties advertise their e-cigarettes online. (Frija Decl. ¶¶ 18, 43). This overlap supports a likelihood of confusion. *See, e.g.*, *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1168-1169 (11th Cir. 2019) (finding significant overlap supporting similarity of advertising where both parties advertised on their own websites and the internet, including social media);

*Canes Bar & Grill of S. Fla., Inc. v. Sandbar Bay, LLC*, 343 F. Supp. 3d 1236, 1244 (S.D. Fla. 2018) (finding factor weighed in favor of likelihood of confusion where parties used marks for similar services and both advertised on social media). Therefore, the similarity of the advertising media weighs in favor of VPR.

      6. <u>Defendants' Intent</u>

When an infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Turner Greenberg Assocs.*, 320 F. Supp. 2d at 1333 (citing *Carnival Corp. v. Seaescape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999).

Weiboli had actual knowledge of the ELF Mark at least as early as July 19, 2021, when the USPTO rejected its trademark registration. (Frija Decl. ¶ 39). Weiboli was on notice that its ELFBAR products were and still are causing confusion with VPR's ELF Mark in the U.S. *Id.* Despite the rejection, Weiboli proceeded to enter the U.S. market and sell its infringing ELFBAR products. Defendants engage in clear-cut copying here giving rise to an inference that Defendants intended to benefit from Plaintiff's reputation to Plaintiff's detriment. *See Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Florida*, 546 F. Supp. 987, 996 (S.D. Fla. 1982). Therefore, Defendants' intent to benefit from VPR's reputation and willful cause of confusion strongly favors VPR.

      7. <u>Evidence of Actual Confusion</u>

Of critical weight in the digit analysis is evidence of actual confusion. Tana v. Dantanna's, 611 F.3d 767, 779 (11th Cir. 2010). While "[a]ctual confusion need not be proven in a trademark infringement case," the strongest evidence is in cases where "consumers have confused the junior

mark for the senior mark." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 225 (5th Cir. 2009). As a matter of evidentiary burden upon the parties, "while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." *Id*.

Here, VPR has presented evidence of actual confusion in the marketplace (Frija Decl. ¶¶ 44-45). The seven factors weigh only in Plaintiff's favor. Plaintiff has shown a probability of success on the merits of its trademark counterfeiting and infringement claim.

   iii. <u>Plaintiff is Likely to Succeed on the Merits of its False Designation of Origin Claim</u>

Liability for false designation of origin, like trademark infringement, is also established here because the determining factor is whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See* 15 U.S.C. § 1125(a); *Two Pesos*, 505 U.S. at 780. The Plaintiff has established the merits of its trademark counterfeiting and infringement claims, therefore likelihood of success is also shown for Plaintiff's claim for false designation of origin.

   iv. <u>Plaintiff is Likely to Succeed on its Common Law Unfair Competition Claim</u>

The same test applies to unfair competition as with federal trademark infringement. *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004). Plaintiff has established the merits of its trademark infringement claims, therefore likelihood of success is also shown for Plaintiff's unfair competition claim.

   v. <u>Plaintiff is Likely to Succeed on its Common Law Trademark Infringement Claim</u>

The same test applies to common law trademark infringement as to federal trademark infringement. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1217-18. Plaintiff has satisfied the

three elements of its federal trademark infringement claims, therefore common law trademark infringement is also established.

### B. Plaintiff is Suffering Irreparable Injury

"[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. Appx. 180, 191 (11th Cir. 2005) citing McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998). A finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where a plaintiff has demonstrated it will lose control of its reputation as a result of a defendant's activities. *Id.*

A likelihood of confusion exists herein because Weiboli's use of ELFBAR name is deceives consumers concerning the source of e-cigarette products called ELF. (Frija Decl. ¶ 48). VPR has no adequate remedy at law so long as Weiboli is able to continue to use the ELF Mark because of VPR's hardship from loss of sales and its inability to control the marketplace. (Frija Decl. ¶ 49). Weiboli is benefiting from the goodwill that VPR invested to establish the ELF mark in the e-cigarette marketplace. (Frija Decl. ¶ 50). Weiboli is being unjustly enriched by its deliberate and willful activities which are causing confusion in both the retail and wholesale marketplaces. (Frija Decl. ¶ 51).

### C. The Balance of Hardships Tips Sharply in Plaintiff's Favor

VPR has expended significant resources to marked ELF e-cigarette products and e-cigarette accessory products. (Frija Decl. ¶ 23). Defendants should not be permitted to continue to sell their e-cigarettes under the ELFBAR name because Plaintiff will suffer suffer both financial harm and nonmonetary harm to its goodwill and reputation. (Frija Decl. ¶ 46). VPR's

ELF Original Auto Draw Conceal Kit product has lost market share and sales since the Weiboli ELFBAR product was introduced. (Frija Decl. ¶ 47).

Meanwhile, Defendants will suffer no legitimate hardship in the event a preliminary injunction is issued, because Defendants have no right to engage in their present infringing activities and were on notice by the USPTO that their product was potentially confusing.

### D.  The Relief Sought Serves the Public Interest

The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. *Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.,* 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. 1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief."). Where, as here, there is a likelihood of confusion created by a defendant's use of the plaintiff's mark, "the public interest would be served by a preliminary injunction." *It's A 10, Inc. v. Beauty Elite Grp., Inc.*, 932 F. Supp. 2d 1325, 1333 (S.D. Fla. 2013). Here, the public interest favors the issuance of the requested relief to avoid further harm to the public.

### IV.  BOND

Federal Rule of Civil Procedure 65(c) provides that no preliminary injunction

> shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined....

District courts have the discretion to issue a preliminary injunction without requiring Plaintiffs to give security, notwithstanding the seemingly mandatory language of the rule. *Tancogne v. Tomjai Enterprises Corp.,* 408 F. Supp. 2d 1237, 1252 (S.D. Fla. 2005). VPR does not believe that a bond is necessary since any goodwill that it has developed under ELFBAR is minimal. Moreover, injunctions granted pursuant to the Lanham Act, 15 U.S.C. § 1116(a), do not

mandate the posting of security. However, VPR stands ready to post a bond to protect the ELF Mark should the Court find that a nominal bond is necessary.

## V.  CONCLUSION

In view of the foregoing, Plaintiff respectfully requests this Court enter an order granting preliminary injunction against the Defendants to prevent any further imminent and irreparable harm and enjoin Defendants from the following actions:

a. using Plaintiff's trademark, and any imitation design that looks substantially similar to Plaintiff's trademark;
b. selling any products or services using Plaintiff's trademark; and
c. advertising or marketing any products or services using any of Plaintiff's trademark.

Plaintiff also asks that this Court set this Motion for hearing, and after such hearing, that this Court issue a preliminary injunction against the Defendants. Plaintiff further asks this Court to award Plaintiff such other and further relief as the Court may deem just and proper.

DATED: October 14, 2022                    Respectfully submitted,

/s/  Joel B. Rothman
JOEL B. ROTHMAN
Florida Bar Number:  98220
joel.rothman@sriplaw.com
LAYLA T. NGUYEN
Florida Bar Number:  1024723
layla.nguyen@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff VPR Brands, LP*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on September 29, 2022, a true and correct copy of the foregoing document was served by electronic mail by the Court's CM/ECF System to all parties listed below on the Service List.

/s/ Joel B. Rothman

## SERVICE LIST

Miss Carrie A. Shufflebarger
Thompson Hine LLP
312 Walnut Street
Suite 1400
Cincinnati, OH 45202
Carrie.Shufflebarger@ThompsonHine.com
Attorney for Shenzhen Weiboli Technology Co. Ltd.

Ecto World LLC
2225 Kenmore Ave.
Suite 110
Buffalo, NY 14207
Pro Se

D&A Distribution LLC
202 Bourne Blvd.
Suite 80
Savannah, GA 31408
Pro Se

SV3 LLC
2303 N 44th Street
Suite 2
Phoenix, AZ 85008
Pro Se

*Ylsn Distribution LLC*
*495 N Oracle Road*
*Suite 105*
*Tucson, AZ 85705*
*Pro Se*

*Safa Goods LLC*
*1212 Market Circle*
*Port Charlotte, FL 33948*
*Pro Se*

*UNISHOW (U.S.A.), INC.*
*5902 Sovereign Drive*
*Suite B*
*Houston, TX 77036*
*Pro Se*

*Kingdom Vapor Inc.*
*226 5th Ave*
*Clarion, PA 16214*
*Pro Se*