UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| VPR BRANDS, LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 9:22-cv-81576 |
| | ) | |
| SHENZHEN WEIBOLI TECHNOLOGY | ) | |
| CO., LTD., YLSN DISTRIBUTION LLC, | ) | |
| ECTO WORLD LLC, SAFA GOODS LLC, | ) | |
| D&A DISTRIBUTION LLC, UNISHOW | ) | |
| (U.S.A.), INC., SV3 LLC, and KINGDOM | ) | |
| VAPOR INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' CONSOLIDATED MOTION TO DISMISS
OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Tucker C. Motta
Fla. Bar No. 112659
MCDOWELL HETHERINGTON LLP
Attorneys for Defendants
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax
tucker.motta@mhllp.com

Eric N. Heyer (admitted *pro hac vice*)
Carrie A. Shufflebarger (admitted *pro hac vice*)
Meixuan (Michelle) Li (admitted *pro hac vice*)
Anna Stressenger (admitted *pro hac vice*)
Krupa A. Patel (admitted *pro hac vice*)
THOMPSON HINE LLP
1919 M Street, NW, Suite 700
Washington, DC 20036
Phone: 202.331.8800
Fax: 202.331.8330

*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    I.     Federal Regulatory Framework Governing Electronic Cigarettes ........................ 2

    II.    VPR's First Amended Complaint and Motion for Preliminary Injunction ........... 4

STANDARD OF REVIEW .................................................................................................. 6

    I.     Rule 12(b)(6) Standard ......................................................................................... 6

    II.    Rule 56 Standard ................................................................................................... 7

ARGUMENT ....................................................................................................................... 8

    I.     VPR's Complaint Fails to Plead Plausible Claims for Trademark
          Infringement, False Designation of Origin, Unfair Competition, and
          Cybersquatting. ..................................................................................................... 8

    II.    VPR's Complaint Fails to Plead a Plausible Claim for Direct Patent
          Infringement ......................................................................................................... 12

CONCLUSION .................................................................................................................... 15

CERTIFICATE OF SERVICE ............................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AOP Ventures, Inc. v. Steam Distrib., LLC*, No. CV-15-1586,
    2016 U.S. Dist. LEXIS 193035 (C.D. Cal. 2016) *reconsideration granted in
    part and vacated on other grounds*, 2016 U.S. Dist. LEXIS 2023438 (C.D.
    Cal. Dec. 27, 2016) ...................................................................................................9

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................6, 7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................8

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*,
    931 F.2d 1472 (11th Cir. 1991) ...............................................................................8

*City Hunt, LLC v. Let's Roam, LLC*,
    No.6:18-cv-1764-Orl-41DCI, 2019 U.S. Dist. LEXIS 223911 (M.D. Fla. Oct.
    29, 2019) .................................................................................................................12

*Craft Kratom Lab, Inc. v. Mancini*,
    2013 U.S. Dist. LEXIS 105852 (S.D. Fla. July 29, 2013) ......................................11

*CreAgri, Inc. v. USANA Health Sciences, Inc.*,
    474 F.3d 626 (9th Cir. 2007) ...................................................................................9

*Dessert Beauty, Inc. v. Fox*,
    617 F. Supp. 2d 185 (S.D.N.Y. 2007)....................................................................10

*Erva Pharm., Inc. v. Am. Cyanamid Co.*,
    755 F. Supp. 36 (D.P.R. 1991)...............................................................................10

*FN Herstal SA v. Clyde Armory, Inc.*,
    838 F.3d 1071 (11th Cir. 2016) .............................................................................10

*Garfield v. NDC Health Corp.*,
    466 F.3d 1255 (11th Cir. 2006) ...............................................................................7

*Glob. Tech Led, LLC v. Every Watt Matters, LLC,*
No. 15-cv-61933-BLOOM/Valle, 2016 U.S. Dist. LEXIS 122111 (S.D. Fla.
May 18, 2016) ...................................................................................................................12

*Gray v. Daffy Dan's Bargaintown,*
823 F.2d 522 (Fed. Cir. 1987) ...........................................................................................9

*Hernandez v. Aurobindo Pharma USA, Inc.,*
582 F. Supp. 3d 1192 (M.D. Fla. 2022) .............................................................................7

*Hit Doctor Tri State Arsenal LLC v. Barth,*
No. 19-14579, 2020 U.S. Dist. LEXIS 24867 (D.N.J. Feb. 11, 2020) ..................................12

*Hudson Drydocks Inc. v. Wyatt Yachts Inc.,*
760 F.2d 1144 (11th Cir. 1985) ...........................................................................................7

*Leroy v. Medtronic, Inc.,*
No. 3:14-cv-284, 2015 U.S. Dist. LEXIS 98902 (N.D. Fla. Feb. 12, 2015) .......................7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ...........................................................................................................8

*McZeal v. Sprint Nextel Corp.,*
335 Fed. Appx. 966 (Fed. Cir. June 18, 2009) ..................................................................12

*MPL Communs. Ltd. v. Jodie,*
No. 20-cv-61418, 2020 U.S. Dist. LEXIS 211995 (S.D. Fla. Oct. 20, 2020) .........................8

*New Century Mortg. Corp. v. 123 Home Loans, Inc.,*
No. 05-80549-civ-HURLEY/HOPKINS, 2006 U.S. Dist. LEXIS 84254 (S.D.
Fla. Nov. 16, 2006) ...........................................................................................................11

*Nicopure Labs, LLC v. FDA,*
944 F.3d 267 (D.C. Cir. 2019) .......................................................................................2, 3

*Oxford Asset Mgmt., Ltd. v. Jaharis,*
297 F.3d 1182 (11th Cir. 2022) ...........................................................................................7

*Plant Food Sys. v. AgroSource, Inc.,*
No. 16-cv-80326, 2016 U.S. Dist. LEXIS 124185 (S.D. Fla. Sept. 12, 2016) ...................10

*Tana v. Dantanna's,*
611 F.3d 767 (11th Cir. 2010) .............................................................................................9

*Thermolife Int'l, LLC v. Vitamin Shoppe, Inc.,*
No. 0:16-cv-60693-UU, 2016 U.S. Dist. LEXIS 122110 (S.D. Fla. June 8,
2016) .................................................................................................................................12

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
   205 F.3d 1219 (10th Cir. 2000) .............................................................................9

*Vapor Technology Ass'n v. FDA*,
   977 F.3d 496 (6th Cir. 2020) ..................................................................................3

*VPR Brands, LP v. HQDTech USA LLC*,
   No. 21-cv-21678-BLOOM/Otazo-Reyes, 2021 U.S. District 207912 (S.D. Fla.
   Oct. 28, 2021) ........................................................................................................15

*Whitehead v. BBVA Compass Bank*,
   979 F.3d 1327 (11th Cir. 2020) ..............................................................................8

**Statutes**

Consolidated Appropriations Act, 2022, Pub. L. 117-103, Division P, Title I,
   Subtitle B ................................................................................................................2

Family Smoking Prevention and Tobacco Control Act of 2009, Pub. L. No 111-
   31, 123 Stat. 1776 (2009) .......................................................................................2

Federal Food, Drug and Cosmetic Act 21 U.S.C. §§ 387-387(u)........................ *passim*

15 U.S.C. § 1114(a) ...............................................................................................1, 6

15 U.S.C. § 1125(a) ............................................................................................1, 6, 9

15 U.S.C. § 1125(d) ...............................................................................................1, 6

21 U.S.C. § 321(rr) (2009)..........................................................................................2

21 U.S.C. § 331(a) ...............................................................................................10, 11

21 U.S.C. § 387a(b) .....................................................................................................2

21 U.S.C. § 387b(6)(A)..........................................................................................3, 10

21 U.S.C. § 387j..........................................................................................................3

21 U.S.C. § 387j(a) ....................................................................................................10

35 U.S.C. § 271(a) ..................................................................................................6, 14

**Other Authorities**

81 Fed. Reg. 28973 (May 10, 2016) (codified at 21 C.F.R. § 1143.1)..................2, 3, 11

81 Fed. Reg. at 28977-78, 29011 ................................................................................3

81 Fed. Reg. 28990-97 .................................................................................................3

81 Fed. Reg. at 29009-15 ............................................................................................3

Fed. R. Civ. P. 12(d) ...................................................................................................7

Fed. R. Civ. P. 56(a) ...................................................................................................7

Federal Rule of Evidence 201 .....................................................................................7

Local Rule 56.1 ............................................................................................................1

Rule 12(b)(6) ...........................................................................................................6, 7

Rule 56 .........................................................................................................................7

Webster's Third New International Dictionary (1976) ...............................................14

## **INTRODUCTION**

Defendants Shenzhen Weiboli Technology Co., Ltd. ("Weiboli"), YLSN Distribution LLC, ECTO World LLC, Safa Goods LLC, D&A Distribution LLC, Unishow (U.S.A.), Inc., SV3 LLC, and Kingdom Vapor Inc. (collectively, "Defendants"), pursuant to the Court's October 17, 2022 order [ECF 6], move to dismiss, or, alternatively, for summary judgment on, Plaintiff VPR Brands, LP's First Amended Complaint.[1]

The Court should dismiss VPR's First Amended Complaint in its entirety, and grant summary judgment on Counts I, II, III, and V. VPR's claims for trademark infringement under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a), for trademark infringement, false designation of origin, and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for common law unfair competition, and for cybersquatting in violation of 15 U.S.C. § 1125(d) (Counts I-III, V) all fail because VPR's use of the ELF mark in commerce has been and is unlawful. The electronic cigarette goods in conjunction with which VPR uses the ELF mark are new tobacco products that lack marketing authorization from FDA and are not compliant with FDA's deferred enforcement policy. VPR is violating the Federal Food, Drug and Cosmetic Act by marketing and selling these adulterated tobacco products. Thus, VPR cannot plead or prove that it has the mandatory element of an enforceable trademark.

Finally, VPR fails to plead a plausible claim for direct patent infringement (Count IV) because it fails to provide a claim chart, identify the accused product(s), or explain how the accused product(s) infringe each element of Claim 13 of U.S. Patent No. 8,205,622 ("'622 Patent").

---

[1] As Defendants move to dismiss Plaintiff's First Amended Complaint, or, alternatively, for summary judgment if the Court considers facts and evidence beyond the pleadings, in an abundance of caution and to comply with Local Rule 56.1, Defendants have filed a Statement of Undisputed Material Facts ("SMF") contemporaneously with this motion.

## BACKGROUND

I.    **Federal Regulatory Framework Governing Electronic Cigarettes**

Electronic cigarettes, also known as "e-cigarettes," "vapor products," and "electronic nicotine delivery systems" ("ENDS"), are regulated by the U.S. Food and Drug Administration ("FDA") under the Federal Food, Drug and Cosmetic Act ("FDCA"). *Nicopure Labs, LLC v. FDA*, 944 F.3d 267, 273 n.1 (D.C. Cir. 2019). In 2009, Congress enacted the Family Smoking Prevention and Tobacco Control Act of 2009 ("TCA") to grant FDA authority over tobacco products under the FDCA. Pub. L. No 111-31, 123 Stat. 1776 (2009). A "tobacco product" was defined, in relevant part, as "any product made or derived from tobacco that is intended for human consumption, *including any component, part, or accessory of a tobacco product*." 21 U.S.C. § 321(rr) (2009) (emphasis added).[2] The TCA's requirements originally only applied to cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco. 21 U.S.C. § 387a(b).

On May 10, 2016, FDA finalized its "Deeming Rule" that, for the first time, deemed ENDS products containing or intended to be used with tobacco-derived nicotine as "tobacco products." 81 Fed. Reg. 28973 (May 10, 2016) (codified at 21 C.F.R. § 1143.1) ("Deeming Rule"). SMF ¶ 7. Thus, since that date, all electronic cigarettes, including devices that are sold without any nicotine-

---

[2] The sole exception to this was for electronic cigarettes with e-liquid containing nicotine not extracted from tobacco, or what FDA calls "non-tobacco nicotine." The Consolidated Appropriations Act, 2022, Pub. L. 117-103, which took effect on April 14, 2022, amended and expanded the statutory definition of "tobacco product" in 21 U.S.C. § 321(rr) to include products "containing nicotine from any source." *See* Consolidated Appropriations Act, 2022, Pub. Law 117-103, Division P, Title I, Subtitle B. If manufacturers and distributors of such non-tobacco nicotine e-cigarettes submitted PMTAs to FDA by May 14, 2022, they would not be in violation of Section 910's marketing authorization requirement during the 60-day period up through July 13, 2022. *See id.* § 111(d). Because VPR's ELF-branded electronic cigarettes are not alleged to contain any nicotine-containing e-liquid of any type, this amendment has no bearing on their legality under the FDCA.

2

containing solution, or "e-liquid," are subject to the requirements of Subchapter IX of the FDCA, 21 U.S.C. §§ 387-387(u). *Nicopure Labs*, 944 F.3d at 273; SMF ¶¶ 8-10.

Any tobacco product that was not commercially marketed as of February 15, 2007, must receive a marketing authorization order before being commercially marketed in the United States. 21 U.S.C. § 387j. SMF ¶¶ 6-7. To obtain a marketing authorization order, manufacturers of ENDS products are required to submit a premarket tobacco product application ("PMTA") to FDA. *See* 81 Fed. Reg. 28990-97. Because millions of ENDS products were already commercially marketed in the United States as of the Deeming Rule's effective date, FDA adopted a discretionary enforcement policy that allowed for a delayed compliance period for ENDS products. *See* 81 Fed. Reg. at 29009-15. Under this discretionary enforcement policy, PMTA submissions were originally required by August 8, 2018. *Id.* Although technically "adulterated" under the FDCA upon the effective date of the Deeming Rule, *see* 21 U.S.C. § 387b(6)(A), ENDS products on the market as of August 8, 2016, would not be subject to FDA enforcement action for failure to submit a PMTA before the August 8, 2018 deadline. 81 Fed. Reg. at 28977-78, 29011.

FDA's PMTA submission deadline changed multiple times over the succeeding years. *See Vapor Technology Ass'n v. FDA*, 977 F.3d 496, 497-502 (6th Cir. 2020). Ultimately, FDA specified that ENDS products for which a PMTA was submitted by September 9, 2020, could continue to be commercially marketed for a period of up to one year after September 9, 2020, provided that the PMTA remained pending and FDA had taken no adverse action on the application. SMF ¶ 11. So-called "open system" devices sold without any nicotine-containing e-liquid that were not commercially marketed in the United States prior to August 8, 2016, are "adulterated" under the FDCA and their sale is illegal unless and until they receive a marketing authorization order from FDA. SMF ¶¶ 13-16.

## II.     VPR's First Amended Complaint and Motion for Preliminary Injunction

VPR filed its Complaint on October 13, 2022, and on December 16, 2022, VPR filed its First Amended Complaint ("FAC"). (ECF 61). On October 14, 2022, VPR filed a motion for preliminary injunction (ECF 5). The Court held a two-day evidentiary hearing on VPR's preliminary injunction motion, with testimony from VPR's founder, Kevin Frija, representatives of two of the Defendants, and from Defendants' expert on FDA regulation of electronic cigarettes.

VPR alleges it is a Fort Lauderdale, Florida-based business "engaged in product development for the vaping market, including e-liquids, vaporizers, and electronic cigarettes (also known as e-cigarettes) which are devices that deliver nicotine or cannabis[.]" FAC, ¶¶ 10-11. "Beginning on November 24, 2017, VPR began marketing a line of electronic cigarettes and electronic cigarette accessories under the ELF brand name and logo." *Id*., ¶ 15; SMF ¶ 1. On November 24, 2017, VPR "first used the ELF mark in commerce in connection with VPR's sale of electronic cigarettes and accessories." FAC, ¶ 15.

On June 5, 2018, VPR obtained U.S. Trademark Registration No. 5,486,616 in international class 34 for use of the mark ELF in connection with "Electronic cigarette lighters, Electronic cigarettes; Smokeless cigarette vaporizer pipe." FAC, ¶ 16 and Exh. 1; SMF ¶ 5. VPR markets two product lines using its ELF mark: (1) the ELF Original Auto Draw Conceal Kit, which VPR describes as a "reusable (non-disposable) bar-shaped e-cigarette featuring a buttonless design, high-capacity battery, and a high-end aluminum body," *id*., ¶¶ 20-22 and Exh. 2; and (2) "high capacity e-cigarette batteries designed to be connected to industry standard refillable 510 mouthpieces," *id*., ¶ 23. SMF ¶ 4. VPR considers electronic cigarettes or e-cigarettes to be "electronic devices which deliver nicotine through atomization, or vaping of e-liquids and without smoke and other chemical constituents typically found in traditional tobacco burning cigarette

products." SMF ¶ 3. VPR used the ELF mark for e-cigarettes and e-cigarette accessories "exclusively." FAC ¶ 30.

VPR introduced these ELF-brand ENDS products without applying for or obtaining a marketing authorization order from FDA. SMF ¶ 2. While VPR's ELF vaporizers are not explicitly marketed for use with nicotine-containing liquids, VPR reasonably expects that consumers use VPR's ELF products with nicotine. SMF ¶ 5. Thus, VPR's ELF vaporizers are subject to the FDCA given the broad definition of "tobacco product" that includes open-system ENDS devices and batteries like VPR's ELF-branded products if they are reasonably expected to be used with nicotine. SMF ¶¶ 8-12. Because VPR brought its ELF products to market after August 8, 2016, it needed to obtain a marketing authorization order from FDA prior to selling the products. SMF ¶¶ 6-7, 13, 18. VPR has not applied for or obtained a marketing authorization order for either of its ELF-branded products. SMF ¶ 19.

VPR alleges that Defendant Weiboli is a Shenzhen, China-based manufacturer of electronic cigarette products, and the "manufacturer and supplier of ELFBAR electronic cigarettes." FAC, ¶¶ 40-42. VPR alleges that the remaining Defendants are authorized U.S.-based distributors to whom Weiboli allegedly exports its ELFBAR electronic cigarettes. *Id*., ¶¶ 40, 43-56. VPR alleges that the distributor Defendants "import and distribute ELFBAR electronic cigarette products throughout the United States, including in Florida" and that the distributor Defendants "advertise, market, promote, offer for sale, distribute, and sell hand-held electronic cigarette products under the ELFBAR name" without VPR's consent or authorization. *Id*., ¶¶ 57-61.

VPR alleges it became aware of the ELFBAR electronic cigarettes being sold in the United States in May 2022, FAC, ¶ 75, and that the ELFBAR products are "causing confusion among

5

consumers, retailers, and distributors of e-cigarettes in the United States," *id*., ¶ 78. VPR further alleges Defendant Weiboli owns, operates, and controls the internet domain name and website at www.ELFBAR.com, and that it is "confusingly similar to [VPR's] ELF Mark." *Id*., ¶¶ 136-137.

VPR also alleges that the ELFBAR products infringe U.S. Patent No. 8,205,622, which VPR owns. *Id*., ¶¶ 84, 86-95 and Exh. 3. The only specific claim from the '622 Patent that VPR's complaint alleges the ELFBAR products infringe is Claim 13. *Id*., ¶ 130.   VPR's   FAC   asserts three counts against all Defendants: (1) trademark infringement under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a) (Count I); (2) trademark infringement, false designation of origin, and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (3) common law unfair competition (Count III). FAC, ¶¶ 101-127. VPR also asserts a claim against Weiboli only for direct infringement of the '622 patent in violation of 35 U.S.C. § 271(a) (Count IV), and for violating the Anti-Cybersquatting Consumer Protection Act under 15 U.S.C. § 1125(d) (Count V) based on the alleged trademark infringement. *Id*., ¶¶ 128-146.

## **STANDARD OF REVIEW**

## I.     **Rule 12(b)(6) Standard**

When assessing a motion to dismiss pursuant to Rule 12(b)(6), the "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice of the nature of the claim and the grounds on which it rests. *Id.* While a complaint's well-pleaded facts are to be accepted as true, legal conclusions are not "entitled to any assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a plaintiff must

6

plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.") (internal citations and quotations omitted). A court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions of facts, or legal conclusions couched as factual allegations. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2022). A court may dismiss a complaint under Rule 12(b)(6) on the basis of an affirmative defense, such as illegality, that is apparent on the face of the complaint. *See Hudson Drydocks Inc. v. Wyatt Yachts Inc.*, 760 F.2d 1144, 1146 n.3 (11th Cir. 1985).

In considering motions to dismiss, federal district courts regularly take judicial notice of public records available on FDA's website because such materials satisfy the requirements of Federal Rule of Evidence 201. *See, e.g.*, *Hernandez v. Aurobindo Pharma USA, Inc.*, 582 F. Supp. 3d 1192, 1200 (M.D. Fla. 2022) (collecting cases); *Leroy v. Medtronic, Inc.*, No. 3:14-cv-284, 2015 U.S. Dist. LEXIS 98902, at **12-14 (N.D. Fla. Feb. 12, 2015) (collecting cases).

## II.     Rule 56 Standard

If a court considers matters outside the pleading, the motion is to be treated as one for summary judgment and disposed of as provided in Rule 56. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 n.2 (11th Cir. 2006); Fed. R. Civ. P. 12(d). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings to establish that there is a genuine issue for trial." *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020) (quoting *Celotex*, 477 U.S. at 322). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## **ARGUMENT**

### I.    **VPR's Complaint Fails to Plead Plausible Claims for Trademark Infringement, False Designation of Origin, Unfair Competition, and Cybersquatting.**

Counts I, II, III, and V of VPR's complaint assert claims for trademark infringement, false designation of origin, unfair competition, and cybersquatting. Counts I, II, and III require the same factual showing for the respective elements of the claim. *See, e.g.*, *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991) ("[T]he same facts support a cause of action for unfair competition as for trademark infringement"); *MPL Communs. Ltd. v. Jodie*, No. 20-cv-61418, 2020 U.S. Dist. LEXIS 211995, at **7-8 (S.D. Fla. Oct. 20, 2020)

(observing that the "test for liability for false designation of origin under 15 U.S.C. section 1125(a) is the same as for a trademark counterfeiting and infringement claim – *i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue" and that "[w]hether a defendant's use of a plaintiff's trademarks created a likelihood of confusion . . . is also the determining factor in the analysis of unfair competition under the common law of Florida" (internal citations omitted)).

To allege trademark infringement under the Lanham Act, a plaintiff must allege: (1) that it has trademark rights in the mark or name at issue; and (2) that the defendant has adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers are likely to confuse the two. *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010).

Ownership of a legally protectable trademark requires *lawful* use of the trademark in commerce. *CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) ("It has long been the policy of the PTO's Trademark Trial and Appeal Board that use in commerce only creates trademark rights when the use is *lawful*. . . . [W]e also agree with the PTO's policy and hold that only *lawful* use in commerce can give rise to trademark priority."); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000) (observing that "shipping goods in violation of federal law cannot qualify as the 'use in commerce' necessary to establish trademark rights" and suggesting that had the plaintiff sold its fumigant product without registering with the EPA, the defendant would have had a strong case that the plaintiff did not have a right in the trademark); *Gray v. Daffy Dan's Bargaintown*, 823 F.2d 522, 526 (Fed. Cir. 1987) ("A valid application cannot be filed at all for registration of a mark without 'lawful use in commerce.'"); *AOP Ventures, Inc. v. Steam Distrib., LLC*, EDCV 15-1586-VAP (KKx), 2016 U.S. Dist. LEXIS 193035, at **14-15 (C.D. Cal. 2016) (holding that sale of bottles of nicotine-

containing e-liquid was unlawful and did not give rise to trademark priority because labels failed to include California Proposition 65 warning of reproductive harm), *reconsideration granted in part and vacated on other grounds*, 2016 U.S. Dist. LEXIS 202438 (C.D. Cal. Dec. 27, 2016); *Dessert Beauty, Inc. v. Fox*, 617 F. Supp. 2d 185, 190 (S.D.N.Y. 2007) (observing that "a party that is in violation of the Food, Drug and Cosmetic Act . . . for not complying with federal labeling regulations cannot obtain a federally registered trademark, nor can it maintain or enforce a previously obtained trademark").

A *per se* violation of a statute regulating the sale of a party's goods constitutes sufficient grounds for finding unlawful use. *Dessert Beauty*, 617 F. Supp. 2d at 190; *Erva Pharm., Inc. v. Am. Cyanamid Co.*, 755 F. Supp. 36, 40 (D.P.R. 1991) (adopting unlawful use doctrine and the "Trademark Board's approach in determining 'unlawful use" including if there is a *per se* violation of a statute regulating a party's goods). Here, 21 U.S.C. § 387j(a) requires an FDA marketing authorization order for any tobacco product, including electronic cigarettes, introduced into U.S. commerce after February 15, 2007. Any product lacking such a marketing authorization order is "adulterated." 21 U.S.C. § 387b(6)(A). And 21 U.S.C. § 331(a) prohibits the "introduction or delivery for introduction into interstate commerce of any . . . tobacco product that is adulterated."

Even if the Eleventh Circuit has not adopted the "unlawful use" defense, it also has not rejected it and courts within the Circuit have recognized it. *See FN Herstal SA v. Clyde Armory, Inc.*, 838 F.3d 1071, 1086-87 (11th Cir. 2016) ("This Court has not adopted the unlawful use doctrine and need not do so today because even if we were to adopt it, [plaintiff] has not submitted evidence sufficient to raise an issue of fact in this respect."); *Plant Food Sys. v. AgroSource, Inc.*, No. 16-cv-80326, 2016 U.S. Dist. LEXIS 124185, at *57 (S.D. Fla. Sept. 12, 2016) (recommending denial of motion for preliminary injunction in part because plaintiff's fertilizer

10

product labels contained language similar to language already found to make improper pesticidal claims by the EPA); *Craft Kratom Lab, Inc. v. Mancini*, 2013 U.S. Dist. LEXIS 105852 (S.D. Fla. July 29, 2013) (finding plaintiff had no valid trademark in "Mr. Nice Guy" mark used on incense because plaintiff fraudulently misrepresented that the incense was not for human consumption but plaintiff's principals pled guilty to violating the Analogue Act, 21 U.S.C. § 813, and admitted that they intended the product to be used for human consumption).

Because VPR introduced its electronic cigarette products bearing the ELF brand and logo after August 8, 2016, and FDA has issued no marketing authorization order for the products, SMF ¶¶ 1-2, the electronic cigarettes are "adulterated" under the FDCA and VPR's marketing and sale of the products is a *per se* violation of 21 U.S.C. § 331(a). SMF ¶ 20. Even accounting for FDA's deferred enforcement policy that allowed electronic cigarettes commercially marketed before the August 8, 2016 effective date of the Deeming Rule to remain on the market while their timely filed corresponding premarket tobacco product applications were pending, VPR's two lines of electronic cigarette products failed to conform with FDA's deferred enforcement policy because VPR began marketing the ELF products in November 2017 and VPR never filed an application for marketing authorization. FAC ¶ 14; SMF ¶ 20.

Because the marketing and sale of VPR's electronic cigarette products is a *per se* violation of the FDCA, VPR has no lawful trademark rights in the ELF mark and so fails to plead a plausible claim for trademark infringement, false designation of origin, or unfair competition, and Defendants are entitled to summary judgment as a matter of law.

Likewise, to have a claim for cybersquatting, a plaintiff must have a valid mark entitled to protection. *See New Century Mortg. Corp. v. 123 Home Loans, Inc.*, No. 05-80549-civ-HURLEY/HOPKINS, 2006 U.S. Dist. LEXIS 84254, at **16-19 (S.D. Fla. Nov. 16, 2006) (citing

*DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004); *City Hunt, LLC v. Let's Roam, LLC*, No.6:18-cv-1764-Orl-41DCI , 2019 U.S. Dist. LEXIS 223911, at *9 (M.D. Fla. Oct. 29, 2019). If a plaintiff cannot demonstrate trademark infringement, it cannot demonstrate cybersquatting. *See, e.g.*, *Hit Doctor Tri State Arsenal LLC v. Barth*, No. 19-14579 (RBK/KMW), 2020 U.S. Dist. LEXIS 24867, at *21 (D.N.J. Feb. 11, 2020). Without a valid or protectable mark, VPR has not pleaded and cannot plead or prove a plausible claim for cybersquatting.

## II.     VPR's Complaint Fails to Plead a Plausible Claim for Direct Patent Infringement

The *Iqbal*/*Twombly* pleading standard applies to claims of direct patent infringement. *Glob. Tech Led, LLC v. Every Watt Matters, LLC*, No. 15-cv-61933-BLOOM/Valle, 2016 U.S. Dist. LEXIS 122111, at **3-4 (S.D. Fla. May 18, 2016). "[B]are assertion[s] that Defendants infringe through the making, using, selling, or offering for sale one or more of the" accused products fails to state a plausible claim. *Id*. at 9 (internal quotations omitted). Moreover, "an allegation of direct patent infringement is insufficient . . . if it 'simply recit[es] some of the elements of a representative claim and then describe[es] generally how an accused product operates, without specifically tying the operation to any asserted claim or addressing ***all*** of the claim requirements.'" *Id*. at 7 (quoting *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-cv-05469-EDL, 2016 U.S. Dist. LEXIS 60211, at *2 (N.D. Cal. 2016) (emphasis added)).

A complaint that fails to include a claim chart detailing how the accused product infringes each claim of the subject patent fails to give a defendant "fair notice—or any notice at all" and is thus "woefully insufficient to raise a right to relief above the speculative level." *Thermolife Int'l, LLC v. Vitamin Shoppe, Inc.*, No. 0:16-cv-60693-UU, 2016 U.S. Dist. LEXIS 122110, at *7 (S.D. Fla. June 8, 2016) (internal quotations omitted); *accord McZeal v. Sprint Nextel Corp.*, 335 Fed. Appx. 966, 969 (Fed. Cir. June 18, 2009) (affirming lower court's dismissal without prejudice after *pro se* plaintiff failed to provide a claim chart following district court's instruction to do so

and affirming that "requiring a preliminary claim chart before discovery is not an abuse of discretion and is routinely required in many jurisdictions").

Claim 13 of the '622 Patent reads as follows:

> An electronic cigarette comprising a tubular electronic inhaler and a tubular electronic atomizer, wherein the electronic inhaler includes an electronic power source that provides an electric current to the electronic atomizer, the electronic cigarette further comprising an electric airflow sensor that is used to turn on and off the electric power source by way of detecting an airflow and sending a signal to a Single Chip Micyoco, wherein the Single Chip Micyoco receives the signal from the electric airflow sensor, instructs the electric power sources to send an electric current to the electronic atomizer, and a time period and a magnitude of the electric current.

'622 Patent, ECF 1-3.

VPR's complaint fails to include a claim chart. The extent of the allegations of direct patent infringement against Weiboli found in VPR's complaint reads as follows:

- "Defendant Weiboli makes, uses, imports, offers for sale, distributes and sells one or more electronic cigarette products that practice all the steps of at least one claim of the '622 Patent." FAC, ¶ 88.

- "ELFBAR products are electronic cigarettes that contain a rechargeable battery that functions as a power source which supplies electric power to an electronic inhaler. In addition to the power source, the inhaler also includes an electric airflow sensor to detect air movement generated by a user's inhaling or puffing act." *Id*., ¶ 90.

- "ELFBAR products also contain an electronic atomizer with an electronic connector, electric heating wire, liquid container, and atomizer cap with an air-puffing hole." *Id*., ¶ 91.

- "The user inhales through the air puffing hole at the end of the ELFBAR to create an air inflow, which triggers the atomization process that converts a solution to a gas emulating the smoking process." *Id*., ¶ 92.

- "The electronic cigarette products that Defendant Weiboli makes, uses, imports, offers for sale, distributes and sells under the ELFBAR brand name infringe one or more claims of the '622 Patent." *Id.*, ¶ 93.

- "Defendant Weiboli makes, uses, imports, offers for sale, distributes and sells electronic cigarette products under other brand names that are substantially similar to the ELFBAR

product, function in the same way as the ELFBAR product, and infringe one or more claims of the '622 Patent." *Id.*, ¶ 94.

- "Within the six years preceding the filing of this Complaint, Weiboli directly infringed on at least one claim of U.S. Patent No. 8,205,622 by the activities referred to in this Complaint in violation of 35 U.S.C. § 271(a)." *Id.*, ¶ 129.

- "Without limiting the foregoing, Weiboli infringed on at least claim 13 of the '622 Patent by making, using, distributing, importing, offering to sell and selling ELFBAR branded electronic cigarettes." *Id.*, ¶ 130.

These limited allegations fail to identify the accused product(s) with any specificity and do not address requisite elements of Claim 13 of the '622 Patent or how the accused product(s) satisfy *all* elements of Claim 13.

For example, Claim 13 describes an "electronic cigarette ***comprising a tubular electronic inhaler*** and ***a tubular electronic atomizer,*** wherein the electronic inhaler includes an electronic power source. . . ." VPR fails to identify an "inhaler" on an accused product or to reference an inhaler in anything but a conclusory fashion. VPR also fails to identify how that "inhaler" supposedly "includes an electronic power source," as required by the plain language of Claim 13. The complaint also says nothing about any of Weiboli's products comprising a "tubular" electronic inhaler and a "tubular" electronic atomizer. And, with good reason, as the images of the ELFBAR products allegedly sold by Weiboli found in the complaint suggest that, far from being "tubular," such products are rectangular or square. *See* FAC ¶ 42.

Indeed, VPR itself describes the ELFBAR products as "bar shaped," not "tubular," and emphasizes that "bar" means a "substance formed into a regular narrow block." *See* FAC, ¶¶ 63-64; Webster's Third New International Dictionary (1976) (defining "tubular" as "having the form of a tube" or "having or consisting of a tube" and "tube" as a "hollow, elongated, usually cylindrical body").

14

VPR also fails to identify how any component of any accused product(s) (which, again, are not specifically identified), satisfies the definition of a "Single Chip Micyoco" called for by Claim 13, or to allege facts regarding how such a component "instructs . . . a time period and a magnitude of the electric current."

VPR's claims that Weiboli's "one or more electronic cigarette products" infringe claim 13 of the '622 patent without identifying the accused product(s) with specificity, linking features of the accused product(s) to Claim 13's language, or providing a claim chart that does the same fall far short of the plausible claim standard.[3] Without a claim chart or any other detailed allegations explaining how any of Weiboli's electronic cigarette products infringe each element of claim 13 (or any other claim) of the '622 patent, VPR's complaint fails to provide Defendants with adequate notice of the bases for its claim and thus fails to plead a plausible claim. VPR's claim for direct patent infringement should be dismissed.

## CONCLUSION

For these reasons, the Court should dismiss or grant summary judgment for Defendants on Counts I, II, III, and V, of VPR's First Amended Complaint, and dismiss Count III of VPR's First Amended Complaint.

---

[3] Nor should the requirement of a claim chart making detailed allegations surprise VPR or its counsel of record. In another case in this district where VPR also alleged infringement of Claim 13 of the '622 Patent, VPR avoided dismissal of the complaint on the same grounds asserted here specifically because it *had* supplied a claim chart with its complaint. *See VPR Brands, LP v. HQDTech USA LLC*, No. 21-cv-21678-BLOOM/Otazo-Reyes, 2021 U.S. District 207912, at **18-19 (S.D. Fla. Oct. 28, 2021) (observing that "the plaintiff in *Global Tech* did not include an infringement chart, illustrating how any of the Accused Products infringed on any of the claims of the patent in suit [and] [i]n contrast, the Claim Chart [VPR provided] illustrates how the HQD products allegedly infringe on claim 13 of the '622 Patent"). Unlike in *HQDTech*, VPR cannot narrowly survive a motion to dismiss here because it has not included a claim chart.

Dated: February 21, 2023

MCDOWELL HETHERINGTON LLP
Attorneys for Defendants
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax


By:   s/Tucker C. Motta
        TUCKER C. MOTTA, ESQ.
        Fla. Bar No. 112659
        tucker.motta@mhllp.com

Eric N. Heyer (admitted *pro hac vice*)
Meixuan (Michelle) Li (admitted *pro hac vice*)
Anna Stressenger (admitted *pro hac vice*)
Krupa A. Patel (admitted *pro hac vice*)
THOMPSON HINE LLP
1919 M Street, NW, Suite 700
Washington, DC 20036
Phone: 202.331.8800
Fax: 202.331.8330
eric.heyer@thompsonhine.com
michelle.li@thompsonhine.com
anna.stressenger@thompsonhine.com
krupa.patel@thompsonhine.com

Carrie A. Shufflebarger (admitted *pro hac vice*)
THOMPSON HINE LLP
312 Walnut Street, 14th Floor
Cincinnati, OH 45202
Phone: 513.352.6700
Fax: 513.241.4771
carrie.shufflebarger@thompsonhine.com

*Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on February 21, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Joel B. Rothman, Esq.
SRIPLAW, P.A.
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
joel.rothman@sriplaw.com

*Counsel for Plaintiff*

s/Tucker C. Motta
Tucker C. Motta