UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| VPR BRANDS, LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 9:22-cv-81576 |
| | ) | |
| SHENZHEN WEIBOLI TECHNOLOGY | ) | |
| CO., LTD., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' EXPEDITED MOTION TO DISSOLVE OR VACATE PRELIMINARY
INJUNCTION OR, IN THE ALTERNATIVE, TO INCREASE SECURITY**

Defendants Shenzhen Weiboli Technology Co., Ltd. ("Weiboli"), YLSN Distribution
LLC, Ecto World LLC ("Ecto World"), D&A Distribution LLC, Unishow (U.S.A.), Inc., SV3
LLC, and Kingdom Vapor Inc. (the "Distributor Defendants"), as well as Defendants Imiracle
(HK) Limited[1] and Heaven Gifts International Limited (collectively, "Defendants"), pursuant to
Federal Rule of Civil Procedure 60, respectfully move this Court to dissolve or vacate the
preliminary injunction order entered on February 23, 2023 (ECF No. 83) (the "Order").
Dissolution or vacatur of the Order is justified by new developments that have occurred since the
entry of the Order on February 23, 2023—namely, an assignment in March 2023 of trademark
rights in the ELF mark by Sigelei Electronic Tech Co., Ltd. ("GD Sigelei"), a non-party with
priority of use of the ELF mark over Plaintiff VPR Brands, LP ("VPR") to Defendant Imiracle
(HK) Limited. The assignment of the ELF mark from GD Sigelei has created substantially changed
circumstances since those existing when the Court entered the preliminary injunction order and

---

[1] Imiracle (HK) Limited is improperly named in the relevant complaint as Imiracle HK Limited.
The company's registration documents include the parentheses around "HK."

will prevent VPR from succeeding on the merits of its trademark infringement, false designation of origin, and unfair competition claims against any of the Defendants.

Alternatively, if the Court declines to dissolve or vacate the preliminary injunction Order, Defendants respectfully request that the Court increase the amount of the security required to $200,000,000. Pursuant to Local Rule 7.1(d)(2), and as described in detail herein, Defendants submit that there is just cause for expedited resolution of the motion because of the substantial ongoing and irreparable harm suffered by Defendants as a result of the injunction. Although no ruling is required by a date certain, Defendants respectfully request a decision within fourteen (14) days of the full briefing of Defendants' Motion.

## BACKGROUND

### I.   Procedural History

VPR filed its original complaint against Defendants Weiboli, YLSN Distribution LLC, Ecto World, D&A Distribution LLC, Unishow (U.S.A.), Inc., SV3 LLC, and Kingdom Vapor Inc. on October 13, 2022, and its first amended complaint ("FAC") on December 16, 2022. ECF No. 61. On October 14, 2022, VPR filed a motion for preliminary injunction. ECF No. 5. The Court held a two-day evidentiary hearing on VPR's motion for preliminary injunction, and, following post-hearing briefing, on February 23, 2023, the Court granted VPR's motion. ECF No. 83.

While the motion for preliminary injunction was pending, on December 27, 2022, VPR filed a similar complaint for trademark infringement, false designation of origin, unfair competition, and patent infringement against Imiracle (HK) Limited and Heaven Gifts International Limited. That complaint was assigned case number 9:22-cv-81977 and assigned to Judge Middlebrooks. On March 1, 2023, VPR moved for a preliminary injunction in that case. *See* ECF No. 20 in Case No. 9:22-cv-81977. Defendants Imiracle (HK) Limited and Heaven Gifts

International Limited filed their opposition on March 16, 2023, and VPR filed its reply on March 23, 2023. *See* ECF Nos. 28 and 29 in Case No. 9:22-cv-81977.

On March 31, 2023, Imiracle (HK) Limited and Heaven's Gift International Limited filed a notice advising that, due to Imiracle (HK) Limited's receipt of an assignment of trademark rights in the mark ELF that have priority over those of VPR, they intended to file their own motion for preliminary injunction against VPR in case number 9:22-cv-81977. *See* ECF No. 33 in Case No. 9:22-cv-81977. While VPR's motion for preliminary injunction in case number 9:22-cv-81977 was pending, on April 17, 2023, VPR filed a motion to reassign case number 9:22-cv-81977 to this Court and to join and consolidate that case with this action. *See* ECF No. 44 in case no. 9:22-cv-81977. On April 20, 2023, Judge Middlebrooks and this Court ordered case number 9:22-cv-81977 to be transferred to this Court. ECF No. 45 in Case No. 9:22-cv-81977. That same day, Imiracle (HK) Limited and Heaven's Gift International Limited indicated that they consented to consolidation of case number 9:22-cv-81977 with this action. *See* ECF No. 47 in Case No. 9:22-cv-81977-AMC. The existing Defendants in this action also confirmed consent to consolidation at the hearing on April 21, 2023.

Additionally, on March 16, 2023, Defendant Ecto World moved to vacate the preliminary injunction Order based on information that a third party, GD Sigelei Electronic Tech Co., Ltd. ("GD Sigelei") had used the ELF mark in commerce more than a year before VPR's alleged first use. *See* ECF No. 107. After full briefing on Ecto World's motion, the Court denied the motion on April 19, 2023, on the ground that the motion was premised on facts that were known to Ecto World at the time of the hearing on VPR's motion, but not presented in opposition to the motion, and so no "changed circumstances" existed that justified granting Ecto World's motion to vacate. *See* ECF No. 127 at 3-5. Unlike Ecto World's earlier motion, the current motion to vacate is

premised entirely on changed circumstances that have resulted from new factual developments occurring in March 2023, well after entry of the Court's entry of its preliminary injunction Order on February 23, 2023.

## II.     Factual Background

### A.     VPR's Use of the ELF Mark and the '616 Registration

VPR is a Fort Lauderdale, Florida-based business "engaged in product development for the vaping market, including e-liquids, vaporizers, and electronic cigarettes (also known as e-cigarettes) which are devices that deliver nicotine or cannabis[.]" FAC, ECF No. 61, at ¶¶ 10-11. The First Amended Complaint claims that "[b]eginning on November 24, 2017, VPR began marketing a line of electronic cigarettes and electronic cigarette accessories under the ELF brand name and logo." *Id*. at ¶ 15. The First Amended Complaint likewise asserts that on November 24, 2017, VPR "first used the ELF mark in commerce in connection with VPR's sale of electronic cigarettes and accessories." *Id*. at ¶ 15.

Based on an application that VPR filed on November 27, 2017, under Section 1(a) of the Lanham Act that alleged a date of first use of November 21, 2017, and a date of first use in commerce of November 24, 2017, on June 5, 2018, VPR secured U.S. Trademark Registration No. 5486616 (the "'616" Registration") in international class 34 for use of the mark ELF in connection with "Electronic cigarette lighters, Electronic cigarettes; Smokeless cigarette vaporizer pipe." *Id*. at ¶ 16 & Exhibit 1 thereto, ECF 61-1.

### B.     GD Sigelei's Continuous Use of the ELF mark in United States Commerce Since 2016

GD Sigelei Electronic Tech Co. Ltd. is a Chinese company that introduced a line of electronic cigarette components under a sub-brand called "ELF" in April 2016. *See* Declaration of Junbiao Ou ("Ou Decl."), ECF Nos. 107, 113-1, 113-2, at ¶¶ 14, 16 and Exhibit A thereto, ECF

107-1. As explained in detail below, since that time, GD Sigelei has continuously used the ELF mark on electronic cigarette products in United States commerce, including through (i) its direct marketing and sales of electronic cigarette components and parts branded with the ELF mark to U.S. distributors and retailers; (ii) marketing and sales of those same products by U.S. distributors of vaping products, including Distributor Defendants Ecto World and D&A Distribution, LLC; (iii) marketing and sales of electronic cigarette components branded with the ELF mark by IPV Technology Co., Ltd., which products were manufactured and sold under a written Authorization and license granted by GD Sigelei; and (iv) marketing and sales of the ELF-branded products by IPV Technology Co., Ltd.'s U.S. customers.

      1.    **GD Sigelei Itself Has Marketed and Sold ELF-Branded Electronic Cigarette Components and Parts from April 2016 Until 2019, and Disposable Electronic Cigarettes From 2022 Until Present**

GD Sigelei itself marketed and sold electronic cigarette components and parts under the ELF mark from April 2016 until 2019, and then again from 2022 until the present. In 2016, GD Sigelei released a new line of electronic cigarette products called ELF, and first announced an ELF electronic cigarette atomizer component in an email announcement to U.S. customers dated April 11, 2016. *See* Ou Decl., ¶¶ 14-16 and Exhibit A thereto. GD Sigelei also began using the mark ELF as a brand for replacement coils and tank components for use in electronic cigarettes in 2016. *Id*. at ¶¶ 19-20. Starting in 2022, GD Sigelei has also used the mark ELF on disposable electronic cigarette products called ELF TANK that it has sold to U.S. distributors. *Id*. at ¶¶ 22-23.

GD Sigelei's sales records reflect sales of the ELF coils and tank components and parts (including electronic cigarette kits containing the ELF tank and explicitly marketed as such) to U.S. customers in 2016, 2017, and 2018, as well as sales of the ELF TANK disposable electronic cigarette product to U.S. customers in 2022 and 2023. *Id*. at ¶ 25.

      **2.**     **U.S. Distributors and Retailers Have Sold Continuously GD Sigelei's ELF-Branded Products since 2016**

In addition to GD Sigelei's sales of electronic cigarette products bearing the ELF mark to U.S. customers in 2016-2018 and 2022-2023, U.S. distributors and retailers have also sold and offered for sale continuously GD Sigelei's ELF-branded products since 2016. Among the distributors that have offered for sale and sold GD Sigelei's ELF coil and tank electronic cigarette components are Defendants Ecto World and D&A Distribution, LLC. *See* Declaration of Matthew Glauser, ECF No. 107-2, at ¶¶ 19-23, 29; Declaration of Robert Ali ("Ali Decl."), Exhibit 1 hereto, at ¶¶ 6-8.[2]

Ecto World had sales of GD Sigelei's ELF coils to customers in 2016 and 2017, and of electronic cigarette kits explicitly marketed as containing GD Sigelei's ELF tank component in 2016. Declaration of Matthew Glauser, ECF No. 107-2, at ¶ 29. Ecto World has also continuously held inventory of and offered for sale via its website GD Sigelei's ELF products since 2016. *Id*. at ¶ 22. For its part, D&A Distribution, LLC had sales of GD Sigelei's ELF coils in every year from 2016 to 2020, and of GD Sigelei's ELF tank and electronic cigarette kits explicitly marketed as containing GD Sigelei's ELF tank component in every year from 2016 to 2020. Ali Decl., Exh. 1, at ¶ 8.

      **3.**     **IPV Technology Co., Ltd. Has Marketed and Sold ELF-Branded Electronic Cigarette Components Under an Authorization and License from GD Sigelei Continuously Since 2019**

On April 1, 2019, GD Sigelei also signed a written "Brand Processing Authorization" agreement pursuant to which it authorized and licensed another Chinese manufacturer, IPV Vaping Technology Co., Ltd. ("IPV") to use GD Sigelei's ELF trademark on IPV's vaping products and

---

[2] Counsel has redacted the bank account numbers listed in the purchase orders that are Exhibit A to Mr. Ali's declaration.

to manufacture and sell ELF-branded vaping products, including to IPV's customers based in the United States. *See* Supplemental Declaration of Junbiao Ou, Exhibit 2 hereto, at ¶¶ 3-4 and Exhibit A thereto.

Pursuant to its license under the Brand Processing Authorization agreement, IPV used the ELF trademark on its vaping products, including a replacement tank/atomizer called "ELF ADA" that was sold as a sub-brand under the IPV brand. *Id*. ¶ 5; Ou Declaration, ECF Nos. 107, 113-1, 113-2, at ¶ 21.

### 4.  U.S. Distributors and Retailers Have Sold IPV's ELF-Branded Electronic Cigarette Components Continuously Since 2019

IPV's ELF ADA-branded products have been sold to and by U.S. customers, including Ecto World. Ecto World has had sales of IPV ELF ADA coils in every year since 2019. Glauser Decl., ECF No. 107-2, at ¶ 29.

### C.  GD Sigelei's Assignment of the ELF mark to Imiracle (HK) Limited

Defendant Imiracle (HK) Limited ("Imiracle") is an affiliate of Defendant Weiboli that, until this Court's entry of its preliminary injunction order, had sold ELFBAR-branded electronic cigarette products in the United States since approximately April 2022. *See* Declaration of Xie Jihui, Exhibit 3 hereto, at ¶¶ 5-6. Prior to that time, ELFBAR-branded electronic cigarettes were sold exclusively to U.S. customers by Defendant Heaven Gifts International Limited ("Heaven Gifts"). *Id*. at ¶ 6. Heaven Gifts is an affiliate of Imiracle and a subsidiary of a fourth affiliated entity, Shenzhen Imiracle Technology Co. Ltd. ("Shenzhen Imiracle"). *Id*., ¶ 5. Imiracle and Heaven Gifts sold ELFBAR-branded electronic cigarettes to authorized master distributors across the United States, including the Distributor Defendants. *Id*., ¶ 12.

On February 24, 2023, VPR filed a lawsuit against GD Sigelei alleging trademark infringement for its use of the ELF mark. *VPR Brands LP v. Shenzhen Sigelei Technology Co.,*

*Ltd., et al.*, Civil Action No. 9:23-cv-80291-AMC (S.D. Fla.). In March 2023, after Imiracle (HK) Limited became aware of VPR's lawsuit against GD Sigelei and that GD Sigelei had, in fact, been using the ELF mark in United States commerce more than a year before VPR first did so, Imiracle and GD Sigelei entered into a Trademark Assignment Agreement and First Amendment thereto (collectively, the "Assignment Agreement"). *See* Declaration of Shangwei Zhang ("Zhang Decl."), Exhibit 4 hereto, at ¶¶ 5-6 and Exhibits A and B thereto.[3]

Under the Assignment Agreement, GD Sigelei assigned to Imiracle its full right, title, and interest in the ELF mark, along with the goodwill of the business in connection with which the ELF mark is used and which is symbolized by the ELF mark. Assignment Agreement, Exh. A to Zhang Decl., at §1(a). The Assignment Agreement gives Imiracle the right to stand fully and entirely in the place of GD Sigelei in all matters related to the ELF mark. *Id.* As part of the Assignment Agreement, Imiracle also licensed use of the mark ELF TANK back to GD Sigelei for use in conjunction with Sigelei's sales of electronic cigarettes in the United States. *See* First Amendment to Assignment Agreement, Exh. B to Zhang Decl., § 4.

Imiracle has since also entered into a Trademark License Agreement with Shenzhen Weiboli allowing it to use the ELF mark in the sale and distribution of electronic cigarettes in the future. *See* Supplemental Declaration of Shangwei Zhang, Exhibit 5 hereto, and Exhibit A thereto. Likewise, Imiracle has authorized the Distributor Defendants' use of the ELF mark, implicitly, if not explicitly, in the sale and marketing of ELFBAR-branded electronic cigarettes since it began selling to them in or about April 2022. Until the Court's entry of its preliminary injunction Order, the Distributor Defendants had served as, and, if the Order is dissolved or vacated, would continue

---

[3] Counsel has redacted the bank account numbers listed in the wire confirmations that are Exhibits C and D to Mr. Zhang's declaration.

to serve as, master distributors of Imiracle's ELFBAR electronic cigarettes, having purchased ELFBAR-branded electronic cigarettes from Imiracle, and before that, Heaven Gifts, and selling them to retailers and consumers in the United States.

## STANDARD OF REVIEW

A district court has continuing jurisdiction over a preliminary injunction and is "authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 578 (5th Cir. 1974); *Atlanta J. & Const. v. City of Atlanta Dep't of Aviation*, 6 F. Supp. 2d 1359, 1364 (N.D. Ga. 1998) (a district court "may relieve a party from obligations determined by the decree if it is no longer equitable."). To dissolve or vacate a preliminary injunction, "a movant must show a change in circumstances between the entry of the injunction and the motion that would render the continuance of the injunction inequitable." *All Web Leads, Inc. v. D'Amico*, No. 18-80571-CV-MIDDLEBROOKS, 2018 U.S. Dist. LEXIS 224560, at *8 (S.D. Fla. Nov. 8, 2018) (citing *CWI, Inc. v. LDRV Holdings Corp.*, 2013 U.S. Dist. LEXIS 197361, 2013 WL 12123229, at *2 (M.D. Fla. Oct. 16, 2013)); *Hodge v. Dept. of Housing & Urban Dev., Housing Div.*, 862 F.2d 859, 861-62 (11th Cir. 1989). "Where the grounds and reasons for which the injunction was granted no longer exist, by reason of changed conditions, it may be necessary to alter the decree or adapt it to such changed conditions, or to set it aside altogether, as where there is a change in the controlling facts on which the injunction rests." *Fleming v. Credit Serv., Inc.*, No. 401-M-Civ-DD, 1964 U.S. Dist. LEXIS 7643, at **23-24 (S.D. Fla. Dec. 9, 1964).

## ARGUMENT

A fundamental requirement for VPR to succeed on its claims of trademark infringement is that VPR must demonstrate that its mark has priority over Defendants. *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). At the time the Court entered its

preliminary injunction Order, the Court determined that VPR had priority over the Defendants based on VPR having begun using the ELF mark in marketing its electronic cigarettes on November 24, 2017, and Defendants not marketing their ELFBAR products until around July 2021. ECF No. 83 at 12.

However, after entry of the preliminary injunction Order, Weiboli, Imiracle, and the other Defendants discovered that an unrelated third party, GD Sigelei, had actual first use in commerce of the ELF mark for electronic cigarettes, and GD Sigelei subsequently assigned to Imiracle GD Sigelei's rights and interests in the ELF mark, including its priority. This recent change in circumstances fundamentally alters the parties' order of priority in use of the ELF mark and renders VPR unable to satisfy a necessary element of its trademark claims against Defendants. Because VPR's likelihood of success on its trademark claims underpins the preliminary injunction, these new facts and changed circumstances warrant vacating, dissolving, or otherwise modifying the preliminary injunction.[4]

---

[4] Even if Weiboli or Imiracle had been aware of GD Sigelei's priority use of the ELF mark prior to the issuance of the preliminary injunction Order, until the assignment of the ELF mark from GD Sigelei to Imiracle occurred in March 2023, the doctrine of *jus tertii* would have barred Weiboli and Imiracle from invoking Sigelei's priority use to defend against VPR's motion for preliminary injunction in any event. *See, e.g.*, *Nutra Health, Inc. v. HD Holdings Atlanta, Inc.*, No. 1:19-cv-05199-RDC, 2021 U.S. Dist. LEXIS 210903, at *4 (N.D. Ga. June 29, 2021) (quoting 6 McCarthy on Trademarks and Unfair Competition § 31.160 (5th ed.) for the proposition that "Defendant is no less an infringer because it is brought to account by a plaintiff whose rights may or may not be superior to the whole world"); *Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473, 489 (E.D. Tex. 2020) (gathering authorities supporting proposition that a "*jus tertii* defense is disfavored in trademark enforcement litigation," including *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820 (9th Cir. 1996)); *Innovation Ventures, LLC v. NVE, Inc.*, 2016 U.S. Dist. LEXIS 6943, at **20-21 & n.2 (E.D. Mich. Jan. 21, 2016) (gathering authorities for proposition that a *jus tertii* defense based on a third party's alleged superior rights in the trademark at issue "is disfavored in trademark cases around the country"); *cf. 1-800 Contacts Inc. v. Lens.Com, Inc.*, 722 F.3d 1229, 1255 (10th Cir. 2013) (quoting 6 McCarthy on Trademarks § 31:48 at 31-131 to 132 for the proposition that the defense of *jus tertii* is "uniformly rejected by the courts").

## I.     VPR LACKS PRIORITY OVER DEFENDANTS

### A.     Imiracle Has Priority Over VPR

"Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users." *Hana Fin., Inc. v. Hana Bank*, 573 U.S. 418, 419 (2015). A party claiming prior use in commerce must show evidence of (1) adoption and (2) "use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195 (11th Cir. 2001) (quotation omitted). Sales of the marked goods is typical evidence of use, but a party may also rely on advertisements, publications, and solicitations. *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1081 (11th Cir. 2016), cert. denied, 137 S. Ct. 1436, 197 L. Ed. 2d 649 (2017).

Moreover, priority is assignable; a party who purchases a trademark inherits the seller's date of first use and, with it, the seller's priority. *See Carnival Brand Seafood Co. v. Carnival Brands, Inc.*, 187 F.3d 1307, 1310 (11th Cir. 1999) (observing that "an assignee of a trademark steps into the shoes of the assignor"); *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 371 (4th Cir. 2021) ("A party can become a senior user of a mark by acquiring from a previous owner an assignment of rights."); *see also* McCarthy on Trademarks § 18:15 ("All courts follow the rule that . . . after a valid assignment, the assignee acquires all of the legal advantages of the mark that the assignor enjoyed, including priority of use."). An assignee of a trademark steps into the shoes of the assignor, and a party may buy the trademark and associated goodwill of a party with an earlier priority date to pre-date the priority of a rival. *Carnival*, 187 F.3d at 1310 (citing McCarthy on Trademarks § 16:5, at 16-7 & n.3 (1998)); *Russell Rd. Food & Bev., LLC v. Spencer*, 829 F.3d 1152, 1156 (9th Cir. 2016) ("It is beyond dispute that a trademark owner may assign his trademark."). This includes when a party obtains priority over another party by acquiring, during

11

litigation, the rights of a prior third party. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d at 1200-01.

Here, GD Sigelei began using the ELF mark in April 2016 when it first advertised sales of its ELF electronic cigarette components to distributors in the United States, more than one year before VPR's alleged first use in November 2017. As described in detail above, GD Sigelei continued to sell electronic cigarette products under the ELF Trademark from 2016 to present, including by its own direct sales, through authorized U.S. distributors and retailers, and pursuant to its authorization and licensing of the ELF mark to IPV and sales of IPV's products by U.S. distributors. Such sales and actions on the part of GD Sigelei constitute continuing use in commerce, as required to maintain rights in the ELF mark and priority over VPR. *See Casa Dimitri Corp. v. Invicta Watch Co. of Am.*, 270 F. Supp. 3d 1340, 1357 (S.D. Fla. 2017) (recognizing that a licensee's use of a mark inures to the benefit of the licensor) (citing *Cotton Ginny, Ltd. v. Cotton Gin, Inc.*, 691 F. Supp. 1347, 1354 (S.D. Fla. 1988); *Clayton v. Howard Johnson Franchise Syst., Inc.*, 740 F. Supp. 1553, 1560 (M.D. Fla. 1988)). Similarly, the sales of GD Sigelei's ELF products by Ecto World and D&A Distribution constituted use by GD Sigelei, as "what is relevant is who was the actor that placed the product with the mark into commerce . . . [and] [GD Sigelei] placed the mark on the product at the point of production, and was the first to distribute the product into the stream of commerce[.]" *Laboratories Roldan C. pro A. v. Tex Int'l*, 902 F. Supp. 1555, 1566, n. 12 (S.D. Fla. 1995); *Select Exp. Corp. v. Richeson*, No. 10-80526-CIV-Dimitrouleas, 2011 U.S. Dist. LEXIS 165333, at **19-20 (S.D. Fla. May 5, 2011).

Given its first and continuing use of the ELF mark in connection with electronic cigarette products—the same type of products offered by VPR—GD Sigelei had priority over VPR. *See, e.g., Planetary Motion, Inc.*, 261 F.3d 1188. GD Sigelei's priority and rights in the ELF mark apply

not only to the exact products it sold, but also "may extend into uses in 'related' products or service markets . . . [t]hus, an owner of a common law trademark may use its mark on related products or services and may enjoin a junior user's use of the mark on such related uses." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1137 (11th Cir. 1998). The ELF products sold by GD Sigelei were unquestionably electronic cigarette components, and therefore competitive with VPR's use of ELF in connection with "electronic cigarettes and accessories." *See* FAC at ¶¶ 15, 27, 29-30; *Tally-Ho*, 889 F.2d at 1023.

Imiracle acquired GD Sigelei's prior use, along with all other rights in the ELF mark, when Imiracle entered into the Assignment Agreement with GD Sigelei to acquire the rights to the ELF mark. Thus, Imiracle has priority over VPR.

### B.      All Defendants Can Rely on Imiracle's Priority

Parties in privity with a senior user can rely on the senior user's rights to defeat an infringement claim. *Kingdomworks Studios, Ltd. Liab. Co. v. Kingdom Studios, Ltd. Liab. Co.*, No. 19-14238-cv-Martinez/Maynard, 2021 U.S. Dist. LEXIS 225018 (S.D. Fla. Nov. 19, 2021) (finding claims against licensee for trademark infringement failed because those in privity with a senior user can rely on the senior user's rights to defeat an infringement claim); *Lapinee Trade, Inc. v. Paleewong Trading Co.*, 687 F. Supp. 1262, 1264 (N.D. Ill. 1988), *aff'd* 876 F.2d 106 (7th Cir. 1989). ("[I]f a third party permits a defendant to use a trademark as part of a contractual arrangement, the defendant can avoid liability for trademark infringement by invoking the superior trademark rights of the third party.").

A formal written agreement is not necessary to establish privity. *See, e.g.*, *Diarama Trading, Inc. v. J Walter Thompson U.S.A., Inc.*, 2005 U.S. Dist. LEXIS 19496, **33-34 (S.D.N.Y. Sept. 6,

2005) (citing *Lapinee Trade,* 687 F. Supp. at 1264; *Maher v. United States*, 314 F.3d 600, 603 n.1 (Fed. Cir. 2002), *cert denied*, 540 U.S. 821 (2003)).

> Indeed, in cases where one party is relying on the superior trademark rights of another party to establish their own priority of use in the mark, *the only requirement is that the party with superior trademark rights 'permit[] a defendant to use a trademark as part of a contractual agreement*.' . . . 'Thus, privity may even be established through an implied-in-fact contract.' . . . 'A contract implied in fact may result as an inference from the facts and circumstances of the case although not formally stated in words . . . and is derived from the 'presumed' intention of the parties as indicated by their conduct.' . . . An implied-in-fact contract is equally binding as an express contract; therefore, an implied in fact contract requires proof of the same elements to establish an express contract - mutuality of intent, offer and acceptance, lack of ambiguity, and consideration. . . However, *these elements can be inferred from the 'specific conduct of the parties, industry custom, and course of dealing*.'

*Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 218 (E.D.N.Y. 2007) (emphasis added) (internal citations omitted); *see also Diarama Trading, Inc.*, 2005 U.S. Dist. LEXIS 19496 (holding implied-in-fact contract existed between the defendants and a third party where there was extensive evidence of relationships between them whereby defendants were authorized to use the mark at issue in their advertising); *United Food Imps., Inc. v. Baroody Imps., Inc.*, No. 09-2835 (DRD), 2010 U.S. Dist. LEXIS 33585, at *17 (D.N.J. Apr. 6, 2010) (finding privity was sufficiently alleged in light of contractual relationship between manufacturer and distributor "in that [the third-party] supplied the Defendants with the allegedly infringing goods").

Here, even though it has not yet used it, Weiboli has a contractual license from Imiracle to use the ELF mark in the sale and distribution of electronic cigarettes. Accordingly, to the extent needed, Weiboli can rely on Imiracle's senior priority to defeat VPR's claims of infringement. *See Kingdomworks Studios,* 2021 U.S. Dist. LEXIS 225018, at *30 ("Because KS is in privity with Kingdom, Inc. through the License Agreement, Plaintiff's claims against KS for trademark

14

infringement and unfair competition must fail.") (citing *578539 B.C. Ltd. v. Kortz*, No. CV 14-04375, 2015 U.S. Dist. LEXIS 192895, at **37-38 (C.D. Cal. April 10, 2015) (recognizing that a licensee or assignee in privity with a senior user may assert the senior user's priority rights and seek cancellation of a junior user's mark).

Similarly, the Distributor Defendants serve as master distributors of Imiracle's ELFBAR products. Imiracle and its affiliate, Heaven Gifts, regularly supplied the Distributor Defendants with ELFBAR products with the understanding and expectation that the Distributor Defendants would use Imiracle's ELF mark in connection with their marketing, promotion, and sale of the ELFBAR products. And indeed, as the evidentiary record from the preliminary injunction hearing reflects, the Distributor Defendants did so—regularly purchasing ELFBAR products from Imiracle or its affiliate Heaven Gifts, and then marketing and selling the ELFBAR products for their own profit and that of Imiracle, using the ELF mark with Imiracle's implicit, if not explicit, authorization in connection therewith.

Therefore, privity exists between Imiracle and the Distributor Defendants. *See, e.g., United Food Imps., Inc.*, 2010 U.S. Dist. LEXIS 33585; *see also Lapinee Trade*, 687 F. Supp. at 1278 (finding privity between manufacturer and exclusive distributor since, by appointing the distributor, the manufacturer "implicitly authorized" the use of the mark, and the distributor "must necessarily use" the mark "in the course of fulfilling its distribution agreement").

## II.    THE ORDER SHOULD BE DISSOLVED OR VACATED BECAUSE VPR IS UNLIKELY TO SUCCEED ON THE MERITS.

The recent assignment by GD Sigelei of its rights in the ELF mark to Imiracle means that VPR cannot succeed on the merits of its claims for trademark infringement, false designation of origin, and unfair competition because it lacks priority over Defendants' use of the ELF mark. *See, e.g., Lapinee Trade*, 687 F. Supp. at 1264 (denying motion for preliminary injunction because

defendant distributor was in privity with manufacturer that had prior, superior rights over the plaintiff, and therefore defendant distributor could rely on the priority as a complete defense); *Plant Food Sys. v. AgroSource, Inc.*, No. 16-80326-Civ-Marra/Matthewman, 2016 U.S. Dist. LEXIS 124185, **57-58 (S.D. Fla. Sep. 12, 2016), adopted by, injunction denied by *Plant Food Sys. v. Agrosource, Inc.*, 2016 U.S. Dist. LEXIS 141321 (S.D. Fla., Oct. 10, 2016) (denying preliminary injunction, finding that "given the facts and legal issues surrounding Plaintiff's interest and priority in the FireWall trademark, Plaintiff clearly has not established a substantial likelihood of prevailing on the merits as to this issue.").

In light of the substantial change in circumstances since the preliminary injunction Order issued, it would be inequitable for the preliminary injunction to continue in effect. *See Absolute Activist Value Master Fund Ltd. v. Devine*, No. 2:15-cv-328-FtM-29MRM, 2017 U.S. Dist. LEXIS 115463, at *9 (M.D. Fla. July 25, 2017) ("Where a movant establishes a change in circumstances 'between entry of the injunction and the filing of the motion that . . . render[s] the continuance of the injunction in its original form inequitable,' the Court may modify the injunction in light of the changed circumstances.").

VPR no longer can succeed on its trademark infringement, false designation of origin, or unfair competition claims, the claims on which the injunction was based, because VPR does not have priority over the Defendants. Therefore, a necessary element for obtaining a preliminary injunction – a substantial likelihood of success on the merits – is not satisfied, and strong grounds for dissolution of the injunction exist. *See, e.g., Fleming.*, No. 401-M-Civ-DD., 1964 U.S. Dist. LEXIS 7643, at *23 ("Where the grounds and reasons for which the injunction was granted no longer exist, by reason of changed conditions, it may be necessary to alter the decree or adapt it to such changed conditions, or to set it aside altogether, as where there is a change in the controlling

facts on which the injunction rests, or where the applicable law, common or statutory, has in the meantime been changed, modified, or extended.").

It would be inequitable for the injunction to remain in place, given not only VPR's minimal likelihood of success on the merits of its trademark claims, but also the substantial and ongoing losses that Defendants have suffered and are continuing to suffer as a result of the injunction. As detailed in their testimony and prior briefing on VPR's motion for preliminary injunction, Defendants faced substantial losses if the injunction was entered. Following this Court's Order, those losses have been realized. Defendants have seen drops in monthly revenue ranging from 11% to as much as 50% from January, and similarly massive drops in profit, with one distributor seeing a 61% drop in profits compared to January. *See* Declaration of Geoff Habicht ("Habicht Decl.") attached hereto as Exhibit 6; Declaration of Matthew Jonathan Glauser ("Glauser Dec.") attached hereto as Exhibit 7; Declaration of Gan Chen a/k/a Gary Chen ("Chen Dec.") attached hereto as Exhibit 8; Declaration of Robert Ali, Exh. 1, at ¶¶ 9-11. As explained in the Distributor Defendants' declarations, these losses are not temporary, and not easily recovered, particularly as the Distributor Defendants have seen hundreds of business or retailer customers stop purchasing *any* products from them, and in the case of one Distributor Defendant, over 12,000 consumers have not made another purchase of any vapor products since the injunction was entered on February 23, 2023. *See* Declaration of Geoff Habicht, Exh. 6, at ¶ 7.

Accordingly, the Order should be vacated and the preliminary injunction dissolved.

## III.    ALTERNATIVELY, IF THE INJUNCTION IS NOT DISSOLVED OR VACATED, THE REQUIRED SECURITY SHOULD BE SUBSTANTIALLY INCREASED.

If Court decides not to dissolve or vacate the injunction, Defendants request that the Court, at minimum, increase the required security to $200,000,000, as Defendants requested previously.

As discussed, ELFBAR products constituted a substantial amount of the Distributor Defendants' sales prior to the injunction, as briefed and shown by Defendants prior to entry of the Order. However, the Court set the security at only $500,000. This amount is insufficient to compensate Defendants for the losses they have already suffered, let alone the losses they will continue to incur should the injunction remain in place until after the trial in June 2024. As detailed above and in the accompanying declarations, the Distributor Defendants have already experienced substantial losses of revenue and profits, with one distributor experiencing profits reduced by more than 60% from their pre-injunction levels. Declaration of Geoff Habicht, Exh. 6, at ¶ 6.

Thus, should the Court decline to vacate its Order or dissolve the injunction, it should increase the security required to maintain the injunction for the duration of this matter to $200 million.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request the Court grant Defendants' motion and vacate or dissolve the preliminary injunction Order or, in the alternative, increase the security VPR is required to post to $200,000,000.

A proposed form of order is enclosed.

18

## <u>CERTIFICATION OF LOCAL RULE 7.1 CONFERENCE</u>

I hereby certify that on March 31, 2023, I emailed counsel for Plaintiff, Joel Rothman, to request a conference on the foregoing motion. Having received no response, I conferred in person with Mr. Rothman on April 21, 2023, following the hearing on the Court's Order to Show Cause in a good faith effort to attempt to resolve the issues presented in the foregoing motion. Mr. Rothman confirmed that Plaintiff intends to oppose the foregoing motion.

/s/ Eric N. Heyer

Dated: April 24, 2023   MCDOWELL HETHERINGTON LLP
Attorneys for Defendants
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax

By:  s/Tucker C. Motta
   TUCKER C. MOTTA, ESQ.
   Fla. Bar No. 112659
   tucker.motta@mhllp.com

Eric N. Heyer (*pro hac vice*)
Meixuan (Michelle) Li (*pro hac vice* forthcoming)
Joseph A. Smith (*pro hac vice* forthcoming)
Anna Stressenger (*pro hac vice* forthcoming)
Krupa A. Patel (*pro hac vice* forthcoming)
THOMPSON HINE LLP
1919 M Street, NW, Suite 700
Washington, DC 20036
Phone: 202.331.8800
Fax: 202.331.8330
eric.heyer@thompsonhine.com
michelle.li@thompsonhine.com
anna.stressenger@thompsonhine.com
krupa.patel@thompsonhine.com

Carrie A. Shufflebarger (*pro hac vice* forthcoming)
THOMPSON HINE LLP
312 Walnut Street, 14th Floor
Cincinnati, OH 45202
Phone: 513.352.6700
Fax: 513.241.4771
carrie.shufflebarger@thompsonhine.com

*Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on April 24, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Joel B. Rothman, Esq.
Layla T. Nguyen, Esq.
SRIPLAW, P.A.
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
joel.rothman@sriplaw.com
layla.nguyen@sriplaw.com
*Counsel for Plaintiff*

Joseph A.Dunne, Esq.
Admitted *Pro Hac Vice*
SRIPLAW, P.A.
175 Pearl Street, Third Floor
Brooklyn, NY 11201
joseph.dunne@sriplaw.com
*Co-Counsel for Plaintiff*

Leslie J. Lott, Esq.
Ury Fischer, Esq.
Lott & Fischer P.L.
255 Aragon Ave., Third Floor
Coral Gables, FL 33134
ljlott@lottfischer.com
ufischer@lottfischer.com
*Co-Counsel for Ecto World LLC*

Gregory S. Weiss, Esq.
Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A.
505 S. Flagler Drive, Suite 600
West Palm Beach, FL 33401
gweiss@mrachek-law.com
*Co-Counsel for Safa Goods LLC and*
*Counsel for Non-Parties Orange Wholesale LLC,*
*Taher Shriteh, Haitham Shriteh and Ahmed Shriteh*

s/Tucker C. Motta
Tucker C. Motta