UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-cv-81576-CANNON/REINHART

| | |
|---|---|
| VPR BRANDS, LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SHENZHEN WEIBOLI TECHNOLOGY | ) |
| CO., LTD., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| IMIRACLE (HK) LIMITED, | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| VPR BRANDS, LP | ) |
| | ) |
| and | ) |
| | ) |
| ELF BRAND LLC, | ) |
| | ) |
| Counterclaim Defendants. | ) |
| | ) |

**DEFENDANT / COUNTERCLAIM PLAINTIFF IMIRACLE (HK) LIMITED'S
PARTIAL ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant / Counterclaim Plaintiff Imiracle (HK) Limited ("Imiracle"), by and through its

undersigned counsel, hereby submits the following Partial[1] Answer, Affirmative Defenses, and

---

[1] Prior to consolidation of Case No. 9:22-cv-81977 with this case, on March 16, 2023, Imiracle (HK) Limited and Heaven Gifts International Limited filed a motion to dismiss or, alternatively, for summary judgment (Doc. No. 26 in Case No. 9:22-cv-81977) in response to VPR's Complaint. Imiracle is filing only a partial answer because it intends to stand on its motion to dismiss VPR's claim for direct patent infringement (Count IV).

Counterclaims against Plaintiff / Counterclaim Defendant VPR Brands, LP ("VPR") and Counterclaim Defendant Elf Brand LLC ("Elf Brand") (collectively, VPR and Elf Brand may be referred to as "Counterclaim Defendants"), as follows:

1.      Imiracle admits that VPR's Complaint purports to allege causes of action arising under the Lanham Act and Florida common law, and that VPR seeks the relief recited in Paragraph 1.  Imiracle denies the remaining factual allegations in Paragraph 1.

2.      Imiracle admits that the Complaint purports to assert a claim for patent infringement against Imiracle, and that VPR seeks the relief recited in Paragraph 2.  Imiracle denies the remaining factual allegations in Paragraph 2.

## JURISDICTION AND VENUE

3.      Imiracle admits that Plaintiff purports to assert claims arising under the Lanham Act.  Imiracle denies the remaining factual allegations in Paragraph 3.

4.      Imiracle admits that Plaintiff purports to asserts a claim arising under the Patent Act against Imiracle that is currently the subject of a pending motion to dismiss. Imiracle denies the remaining factual allegations in Paragraph 4.

5.      Paragraph 5 contains a legal conclusion to which no responsive pleading is required.  To the extent Paragraph 5 is deemed to include factual allegations, denied.

6.      Paragraph 6 contains a legal conclusion to which no responsive pleading is required.  To the extent Paragraph 6 is deemed to include factual allegations, denied.

7.      Paragraph 7 contains a legal conclusion to which no responsive pleading is required.  To the extent Paragraph 7 is deemed to include factual allegations, denied.

8.      Imiracle admits that it has marketed and sold nicotine vaporizing products to authorized distributors in this judicial district.  Imiracle denies the remaining factual allegations in

Paragraph 8 and Footnote 1, including any characterization of statements made in pleadings other than this action, which documents speak for themselves.

9.     As Paragraph 9 is not pled as against Imiracle, no answer by Imiracle to the factual allegations in Paragraph 9 is required.

10.     Paragraph 10 contains a legal conclusion to which no responsive pleading is required.  To the extent Paragraph 10 is deemed to include factual allegations, denied.

11.     Imiracle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, and therefore denies the same.

12.     Denied.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Imiracle admits that on June 5, 2018, the United States Patent and Trademark Office issued U.S. Trademark Registration No. 5,486,616, which document, attached as Exhibit 1 to the Complaint, speaks for itself.  Imiracle denies the remaining factual allegations in Paragraph 17.

18.     Paragraph 18 includes legal conclusions, to which no response is required.  Imiracle denies any factual allegations that are included in Paragraph 18.

19.     Denied.

20.     Denied.

21.     Imiracle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore denies the same.

22.     Imiracle admits that Exhibit 2 is a copy of a specimen in the prosecution file for U.S. Trademark Registration No. 5,486,616, which document speaks for itself.  Imiracle denies the remaining factual allegations in Paragraph 22.

23.     Imiracle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore denies the same.

24.     Imiracle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and therefore denies the same.

25.     Denied.

26.     Imiracle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26, and therefore denies the same.

27.     Imiracle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and therefore denies the same.

28.     Denied.

29.     Denied.

30.     Imiracle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30, and therefore denies the same.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Imiracle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34, and therefore denies the same.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Denied.

39.     Denied.

40.     Denied.

41.     Admitted.

42.     Imiracle admits that it and Shenzhen Imiracle are affiliates, and that Shenzhen Imiracle is a Chinese manufacturer of vaporizers and e-cigarettes.  Imiracle denies the remaining factual allegations in Paragraph 42.

43.     Imiracle admits that it and Shenzhen Imiracle are affiliates of Shenzhen Weiboli Technology Co. Ltd.  Imiracle denies the remaining factual allegations in Paragraph 43.

44.     Admitted.

45.     Imiracle admits that Weiboli is currently a defendant in the numbered case referenced in Paragraph 45, but denies that matter is captioned as stated by VPR in Paragraph 45.

46.     Admitted.

47.     Imiracle admits that Exhibit 4 purports to list various cases pending in this district and the Middle District of Florida in which Imiracle (HK) Limited is a party, which document speaks for itself.  Imiracle denies any other factual allegations contained in Paragraph 47.

48.     Denied.

49.     The documents that VPR references in Paragraph 49 speak for themselves.  Imiracle denies the remaining allegations in Paragraph 49.

50.     The documents that VPR references in Paragraph 50 speak for themselves.  Imiracle admits these documents allege claims involving infringement and counterfeiting of the design

mark shown in U.S. Registration No. 6,555,255, also shown in Paragraph 50.  Imiracle denies the remaining factual allegations in Paragraph 50.

51.     The documents that VPR references in Paragraph 51 speak for themselves.  Imiracle denies the remaining allegations in Paragraph 51.

52.     The documents that VPR references in Paragraph 52 speak for themselves.  Imiracle denies the remaining allegations in Paragraph 52.

53.     The documents that VPR references in Paragraph 53 speak for themselves.  Imiracle admits the design mark shown in U.S. Registration No. 6,555,255 is distinctive.  Imiracle denies the remaining allegations in Paragraph 52.

54.     The documents that VPR references in Paragraph 54 speak for themselves.  Imiracle denies the remaining allegations in Paragraph 54.

55.     Imiracle admits that by an assignment dated August 23, 2022, Weiboli assigned U.S. Registration No. 6,555,255 to Imiracle, which assignment speaks for itself.  Imiracle denies the remaining factual allegations in Paragraph 55.

56.     Imiracle admits that, prior to February 23, 2023, it sells and distributes at wholesale electronic cigarettes to customers located in the United States.

57.     Imiracle admits that, prior to February 23, 2023, it sold at wholesale and distributed ELFBAR and LOST MARY electronic cigarette products that were labeled as "Designed by ELFBAR" in the United States, including to distributors in Florida.

58.     Denied.

59.     Denied.

60.     Imiracle admits that it previously sold hand-held electronic cigarette products that included the ELFBAR mark, and, since February 23, 2023, has continued to sell products that bear

the LOST MARY mark without any reference to ELFBAR, to U.S. distributors, who in turn distributed those products throughout the United States, including this judicial district.  Imiracle denies the remaining allegations in Paragraph 60.

61.    Denied.

62.    Denied.

63.    Denied.

64.    Imiracle admits that other third-party products include the term "bar" as part of their brand names.  Imiracle denies the remaining factual allegations in Paragraph 64.

65.    Denied.

66.    Denied.

67.    Denied.

68.    Denied.

69.    Denied.

70.    Imiracle admits that on December 20, 2020, Weiboli filed U.S. Trademark Application No. 90436816, which document speaks for itself.  Imiracle denies the remaining allegations in Paragraph 70.

71.    The documents that comprise the file history for U.S. Trademark Application No. 90436816 speak for themselves.  Imiracle denies the remaining factual allegations in Paragraph 71.

72.    The documents that comprise the file history for U.S. Trademark Application No. 90436816 speak for themselves.  Imiracle denies the remaining factual allegations in Paragraph 72.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

77.    Denied.

78.    Denied.

79.    Imiracle admits that a copy of United States Patent Number 8,205,622, entitled "Electronic Cigarette," is attached as Exhibit 3 to the Complaint, which document speaks for itself. Imiracle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 79, and therefore denies the same.

80.    The '622 patent attached as Exhibit 3 speaks for itself.  Imiracle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 80, and therefore denies the same.

81.    The '622 patent attached as Exhibit 3 speaks for itself.  Imiracle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 81, and therefore denies the same.

82.    The '622 patent attached as Exhibit 3 speaks for itself.  Imiracle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 82, and therefore denies the same.

83.    Denied.

84.    Denied.

85.    Imiracle admits that its products are electronic cigarettes. Imiracle denies that its products infringe the '622 patent, and denies the remaining factual allegations in Paragraph 85.

86.    Denied.

8

87.     Denied.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Imiracle repeats and realleges the responses set forth in paragraphs 1-95, above, as if set forth fully herein.

97.     Imiracle states that U.S. Registration No. 5486616, attached to the Complaint as Exhibit 1, speaks for itself.  Imiracle denies the remaining allegations in Paragraph 97.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Imiracle repeats and realleges the responses set forth in paragraphs 1-95, above, as if set forth fully herein.

105.    Denied.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Imiracle repeats and realleges the responses set forth in paragraphs 1-95, above, as if set forth fully herein.

114.    Denied.

115.    Denied.

116.    Denied.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Imiracle has filed a motion to dismiss Plaintiff's claim for direct patent infringement, which remains pending before the Court. As a result, no response is required to Paragraph 123 at this time.

124.    Imiracle has filed a motion to dismiss Plaintiff's claim for direct patent infringement, which remains pending before the Court. As a result, no response is required to Paragraph 124 at this time.

125.    Imiracle has filed a motion to dismiss Plaintiff's claim for direct patent infringement, which remains pending before the Court. As a result, no response is required to Paragraph 125 at this time.

126.    Imiracle has filed a motion to dismiss Plaintiff's claim for direct patent infringement, which remains pending before the Court. As a result, no response is required to Paragraph 126 at this time.

127.    Imiracle has filed a motion to dismiss Plaintiff's claim for direct patent infringement, which remains pending before the Court. As a result, no response is required to Paragraph 127 at this time.

## **PRAYER FOR RELIEF**

Imiracle denies that Plaintiff is entitled to any of the relief it seeks in its Prayer for Relief, including paragraphs a-l.

## **AFFIRMATIVE DEFENSES**

Imiracle asserts the following affirmative defenses without conceding that it bears the burden of proof as to any of the defenses pled. Imiracle reserves the right to assert any additional affirmative defenses as they become known.

1.      Plaintiff's Complaint fails to state a claim upon which relief may be granted. Imiracle has not infringed any valid trademark right that VPR may possess, and Imiracle does not infringe and has not infringed, either literally or under the doctrine of equivalents, directly or indirectly, willfully or otherwise, any valid and enforceable claim of VPR's alleged patents.

2.      Plaintiff's claims are barred by illegality and/or unlawful use, rendering any trademark rights it may claim to possess to be unenforceable.

3.      Plaintiff's claims are barred because it cannot establish priority trademark rights in the ELF mark over Imiracle.

4.      Plaintiff's claims are barred by equitable doctrines of unclean hands, acquiescence, waiver, estoppel, and/or laches.

5.      Plaintiff's U.S. Trademark Registration no. 5,486,616 is invalid because VPR committed fraud in the prosecution of that application.

6.      Plaintiff's U.S. Trademark Registration no. 5,486,616 is void due to non-use of the trademark at the time Plaintiff filed the '844 Application pursuant to Section 1(a) of the Lanham Act.

7.      The claims of VPR's asserted patent are invalid for failure to meet one or more of the conditions of patentability as specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103 and/or 112, *et seq*.

8.      No claim of VPR's asserted patent can be validly construed to cover any product or action of Imiracle.

9.      VPR's patent claim is barred in whole or in part by prosecution history estoppel; as a result of attorney argument and amendments made in the prosecution of the '622 patent and in

the '622 patent specification as originally filed, VPR may not assert infringement under the doctrine of equivalents of the asserted claims of the '622 patent.

10.     VPR's patent claim is barred in whole or in part by estoppel; VPR is estopped from asserting infringement under the doctrine of equivalents on the basis that an alleged equivalent was expressly disclosed in VPR's patent application, but not expressly claimed, and identified by VPR as an alternative to a corresponding, expressly claimed limitation so as to have been dedicated to the public.

11.     VPR's patent claim is barred or otherwise limited under principles of equity, including waiver, estoppel, unclean hands, and/or acquiescence and render VPR's asserted patent unenforceable.

12.     On information and belief, VPR's claim for damages for infringement of the '622 patent is barred in whole or in part under 35 U.S.C. § 287 because of VPR's failure to adequately mark, or require its licensed users to mark, substantially all commercial embodiments of the '622 patent with the '622 patent number.

13.     VPR is barred by 35 U.S.C. § 288 from recovering any costs associated with its claims.

14.     Plaintiff's claims are barred because Imiracle's conduct did not cause and was not likely to cause irreparable harm.

15.     Plaintiff's claims for damages are barred because Plaintiff cannot show the availability of statutory damages; nor can Plaintiff show any financial injury or loss attributable to the acts set forth in the Complaint.

16.     Imiracle has not infringed, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid enforceable, or asserted claim of the '622 patent.

17.     The asserted claims of the '622 Patent are invalid under 35 U.S.C. §§ 102, 103, and 112.

18.     To the extent Imiracle engaged in violations of the referenced statutes or regulations, such violations were not knowing, willful, or intentional, factors which, if proven, will impact the extent of monetary remedies available to Plaintiff under the applicable law, including but not limited to 15 U.S.C. § 1117.

19.     There may be additional affirmative defenses to the claims alleged by Plaintiff that are currently unknown to Imiracle.  Imiracle reserves the right to amend its Answer to allege additional affirmative defenses in the event Imiracle discovers additional information that indicates such additional defenses are appropriate.

## COUNTERCLAIMS
### (Preliminary Injunctive Relief Requested)

Imiracle (HK) Limited ("Imiracle" or "Counterclaim Plaintiff") hereby asserts the following counterclaims against VPR Brands, LP ("VPR") and Elf Brand LLC ("Elf Brand") (collectively, VPR and Elf Brand may be referred to as "Counterclaim Defendants"), and alleges and avers as follows:

## PARTIES

1.     Counterclaim Plaintiff Imiracle is a Hong Kong limited liability company that has its principal place of business in Hong Kong.

2.     On information and belief, Counterclaim Defendant VPR is a Delaware limited partnership with its principal place of business at 1141 Sawgrass Corporate Parkway, Sunrise, Florida 33323.

3.     On information and belief, Counterclaim Defendant Elf Brandis a Florida limited liability company with a principal address at 14820 NW 60th Avenue, Miami Lakes, Florida

330114, with a registered agent name and address listed as Joel B. Rothman, 21301 Powerline Road, Suite 100, Boca Raton, Florida 33433.

## **JURISDICTION**

4.     This Court has personal jurisdiction over Counterclaim Defendants because VPR has submitted to the Court's jurisdiction by filing its Complaint against Counterclaim Plaintiff, and both Counterclaim Defendants reside in this judicial district.

5.     This Court has subject matter jurisdiction over this case pursuant to 18 U.S.C. §§ 1131 (federal question jurisdiction), 1338 (civil action arising under any act of Congress relating to trademarks and patents), and 2201 (Declaratory Judgment Act).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Counterclaim Defendant VPR initiated a lawsuit in this judicial district against Counterclaim Plaintiff on the issues to be determined by these counterclaims, and both Counterclaim Defendants reside in this judicial district.

## **FACTS**

### *Imiracle's ELFBAR Mark*

7.     Counterclaim Plaintiff Imiracle is the current owner of the ELFBAR brand and related intellectual property, which it has historically used in connection with the distribution and sale of vapor products that have been marketed in the United States and internationally under the well-known ELFBAR brand.

8.     Prior to February 23, 2023, Imiracle had sold ELFBAR-branded electronic cigarette products to master distributors in the United States since approximately April 2022.  Prior to that time, ELFBAR-branded electronic cigarettes were sold to U.S. master distributors by Imiracle's affiliate, Heaven Gifts International Limited.

9.     Through different corporate relationships, Imiracle and Heaven Gifts International Limited are ultimately indirectly controlled by the same individual.

10.     The ELFBAR branded products, including disposable electronic cigarettes, have been among the most popular and best-selling brands, and are widely recognized within the United States and internationally.

11.     ELFBAR-branded electronic cigarettes are one of the leading products in the electronic cigarette industry, and are known for their dependability and high quality.

12.     Imiracle has worked hard to establish the ELFBAR-branded electronic cigarettes as a premier disposable electronic cigarette brand by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior vaping experience.

13.     Imiracle has expended substantial time, money, and other resources in advertising and otherwise promoting ELFBAR-branded electronic cigarettes.

14.     Imiracle has expended substantial time, money, and effort in developing customer recognition and awareness of ELFBAR-branded electronic cigarettes, including via point of purchase materials, displays, websites, attending industry trade shows, and social media promotions.

15.     Imiracle has sold ELFBAR-branded electronic cigarettes to authorized master distributors across the United States.

16.     As a result of the popularity and recognition of the ELFBAR-branded electronic cigarettes, these products have been subject to numerous counterfeiters and knock offs.

***VPR's Alleged ELF Mark***

17.     On information and belief, on or around November 21, 2017, a Chinese Company, Shenzhen Clean Vapor Technology Co. Limited ("Clean Vapor"), sent to VPR samples of pre-existing products bearing the trademark ELF, which products were identified as the "ELF auto draw mini conceal Vaporizer" and "ELF Vaporizer."

18.     On information and belief, Clean Vapor marketed, sold, or distributed the products referenced in Paragraph 17 above in the United States and elsewhere prior to sending the sample products to VPR.

19.     On November 27, 2017, VPR filed U.S. Application Serial No. 87697884 under Section 1(a) of the Lanham Act, seeking to register the mark ELF ("VPR's Mark") for use in connection with "Electronic cigarette lighters; Electronic cigarettes; Smokeless cigarette vaporizer pipe" in International Class 34, alleging a date of first use of November 21, 2017, and a date of first use in commerce of November 24, 2027 (the "'884 Application").

20.     In the '884 Application, VPR's CEO Kevin Frija provided sworn declarations that VPR was the lawful owner of the ELF mark, that to the best of his knowledge no other person possessed rights in that mark, that the mark is in use in commerce in connection with all of the goods/services" listed in the '884 Application, that willful false statements "may jeopardize the validity of the application or submission or any registrations resulting therefrom," and "that all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true."

21.     The '884 Application matured into U.S. Trademark Registration No. 5486616 on June 5, 2018 ("VPR's Alleged ELF Registration").

22.     On November 30, 2017, three days after filing the '884 Application, VPR entered into an "Exclusive Manufacturing Agreement" with Clean Vapor, which purported to grant to VPR

the exclusive rights in the "sale or distribution of the Products in USA," defined as the "ELF auto draw mini conceal Vaporizer" and "ELF Vaporizer."

23.     The "Exclusive Manufacturing Agreement" did not transfer to VPR any trademark rights Clean Vapor may have possessed in any "ELF" marks by virtue of Clean Vapor's prior marketing, sale, or distribution of such products, or any goodwill associated therewith.

24.     VPR did not use and was not using the ELF mark in US commerce in connection with the sale of any goods on November 21, 2017, November 24, 2017, November 30, 2017, or any other priority date it may claim in connection with the '616 Registration.

25.     On information and belief, VPR did not begin distributing ELF-branded goods in U.S. commerce until late-January 2018, at the earliest.

26.     On information and belief, VPR did not begin distributing ELF-branded batteries until in or around late-2019.

***The Weiboli Litigation and the Acquisition of Sigelei's ELF Mark.***

27.     On October 13, 2022, VPR filed Case No. 9:22-cv-81576-AMC in this judicial district against Imiracle's affiliate, Shenzhen Weiboli Technology Co., Ltd., and all of Imiracle's United States master distributors (the "Weiboli Action"), alleging the same causes of action that it has alleged against Imiracle based on VPR's Alleged ELF Registration and any other rights it may possess in the trademark ELF ("VPR's ELF Mark").

28.     On October 14, 2022, VPR filed a motion for a preliminary injunction in the Weiboli Action, and on February 23, 2023, the Court issued a Preliminary Injunction against Weiboli and all of Imiracle's U.S. master distributors, enjoining the advertising, marketing, distribution, or sale of any products bearing Imiracle's ELFBAR mark.

29.     The foundation of the Preliminary Injunction was the Court's finding that, based on the record before the Court at that time, VPR had priority for the ELF mark because it had purportedly used the ELF mark in commerce prior to the Defendants in the Weiboli Action.

30.     After issuance of the Preliminary Injunction in the Weiboli Action, additional facts came to light that demonstrate that VPR does not possess priority trademark rights in the United States in connection with the trademark ELF used in connection with electronic cigarettes and related goods and accessories in Class 34.

31.     On February 24, 2023, VPR filed Case No. 9:23-cv-80291-AMC in this court against GD Sigelei Electronic Tech Co. Ltd. ("GD Sigelei"), among other defendants (the "Sigelei Action).

32.     GD Sigelei is a Chinese company that, in 2016, released a sub-branded product line of electronic cigarette components (the "Sigelei ELF Products") under the trademark ELF (the "Sigelei ELF Mark").

33.     GD Sigelei has continuously used the Sigelei ELF Mark in United States commerce in connection with the Sigelei ELF Products since at least as early as 2016, and has permitted U.S. distributors of its products to use the same in connection therewith.

34.     GD Sigelei's use of the Sigelei ELF Mark in connection with the Sigelei ELF Products since 2016 clearly establishes its prior senior rights over VPR in the trademark ELF for goods in Class 34.

35.     By a Trademark Assignment Agreement signed on March 25, 2023, and dated March 13, 2023, as amended on March 29, 2023, GD Sigelei assigned to Imiracle all of GD Sigelei's right, title and interest in and to GD Sigelei's ELF Marks, together with the goodwill of the business in which GD Sigelei's ELF Marks are used and which is symbolized by the GD

Sigelei's ELF Marks, along with the right to recover for damages and profits for past infringement thereof, and to stand fully and entirely in place of GD Sigelei in all matters related to GD Sigelei's ELF Marks.

36.     By virtue of this assignment, Imiracle now possesses GD Sigelei's prior and superior rights in and to the trademark ELF for use in connection with goods in Class 34, thereby giving it prior and superior rights to any rights that VPR may possess and try to assert in this action.

***Elf Brand's Infringing Products***

37.     In early 2023, Imiracle first learned that a disposable electronic cigarette called the "ELF VPR 5000 Ultra" was being marketed as "coming soon" through targeted communications to U.S. distributors of Imiracle's ELFBAR products

38.     In March 2023, Imiracle first became aware that another disposable electronic cigarette called the "ELF VPR 7000 Ultra" was marketed as "coming soon."

39.     Imiracle learned that the "ELF VPR 7000 Ultra" was being advertised and marketed through the website "ELFBRAND.com" and as a "VPR Brands, L.P.-licensed electronic cigarette."

40.     Imiracle continued to monitor the ELFBRAND.com website and consult with Imiracle's distributors to determine if the "ELF VPR 7000 Ultra" disposable electronic cigarette is being sold in U.S. commerce.

41.     In March 2023, Imiracle discovered that a product brochure had been uploaded to the ELFBRAND.com website showing the forthcoming "ELF VPR 7000" disposable electronic cigarette.

42.     On or about April 3, 2023, an updated brochure, or at least a brochure with an electronic file name indicating it was an updated brochure, was uploaded to the "ELFBRAND.com" website.

43.     The "ELF VPR 7000 Ultra" disposable electronic cigarette copied the shape, coloring, font, and style of Imiracle's ELFBAR electronic cigarette as demonstrated below:

 

 

44.     The ELF VPR 7000 Ultra is advertised in the product brochure as available in the following twelve flavors, which are identical to flavors in which Imiracle's ELFBAR electronic

cigarettes are manufactured and, until very recently as a result of the preliminary injunction entered in the Weiboli Action, were sold in the United States: pineapple strawnana; strawberry banana; bluerazz ice; peach ice; rainbow candy; strazz; Miami mint; tropical rainbow blast; strawberry watermelon; watermelon ice; watermelon bubblegum; and lemon mint.

45.     The product brochure also provides manufacturer's suggested retail prices (MSRP) of $20 for the ELF VPR 7000 Ultra products—which claim on their labeling to contain sufficient e-liquid for 7,000 puffs per device. This MSRP is $5 to $8 lower than the typical historic retail price in the United States of ELFBAR electronic cigarettes with an estimated puff count of 5,000 puffs per device.

46.     As the foregoing reflects, the "ELF VPR 7000 Ultra" disposable electronic cigarette appears to be intended to be a direct competitor to Imiracle's ELFBAR products that seeks to capitalize on the customer recognition and goodwill established by the ELFBAR brand with the same customers and in the same market.

47.     Upon information and belief, VPR has licensed VPR's ELF Mark and Alleged ELF Registration to Elf Brand for use in connection with the manufacture, distribution, marketing, and sale of the products identified immediately above.

48.     The introduction of the "ELF VPR 7000 Ultra" is likely to cause substantial confusion among distributors, retailers, and customers as to the source and association of the product with Imiracle's ELFBAR products.

49.     The introduction of the "ELF VPR 7000 Ultra" will cause Imiracle to lose control over its reputation and goodwill in the marketplace.

50.     VPR and Elf Brand are seeking to unfairly benefit from the consumer goodwill that Imiracle has established with ELF and ELFBAR in the electronic cigarette marketplace, particularly in the disposable electronic cigarette segment.

51.     VPR and Elf Brand will be unjustly enriched by its deliberate and willful activities which will cause consumer confusion.

52.     The harm to Imiracle is actual, imminent, and irreparable.

## COUNT I
**(Trademark Infringement, Unfair Competition, and False Designation of Origin in Violation of 15 U.S.C. § 1125(a)(1)(A) Against VPR and Elf Brand)**

53.     Imiracle incorporates by reference the allegations of Paragraphs 1-52 above, as if fully set forth herein.

54.     Counterclaim Defendants' adoption and unauthorized use in commerce of VPR's ELF Mark in connection with the advertising, marketing, and sale of goods that are identical, substantially similar, and/or highly related to those offered by Imiracle, as alleged herein, is likely to cause confusion, to cause mistake, or to deceive consumers as to the source, origin, affiliation, connection, or association of Counterclaim Defendants' goods, and is likely to cause consumers to mistakenly believe that Counterclaim Defendants' goods have been authorized, sponsored, approved, endorsed or licensed by Imiracle, or that Counterclaim Defendants are in some way affiliated with Imiracle or the goods that Imiracle offers under its marks.

55.     Counterclaim Defendants' acts alleged herein constitute infringement, unfair competition, and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1115(a).

56.     By reason of Counterclaim Defendants' actions, Imiracle has suffered irreparable harm to its valuable trademarks and the goodwill associated therewith.  Imiracle has been and,

unless Counterclaim Defendants are preliminarily and permanently restrained from their actions, will continue to be, irreparably harmed.

57.     As a direct and proximate result of Counterclaim Defendants' conduct, Imiracle has suffered and will continue to suffer damages in an amount to be proved at trial.

<u>**COUNT II**</u>
**(Cancellation of U.S. Trademark Registration No. 5,486,616 for ELF under 15 U.S.C. §§ 1064 and 1119 based on Priority Against VPR)**

58.     Imiracle incorporates by reference the allegations of Paragraphs 1-52, above, as if fully set forth herein.

59.     Section 1119 of the Lanham Act provides that in "any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any part of the action."

60.     By virtue of the Trademark Assignment Agreement from GD Sigelei, Imiracle may assert and rely upon prior and superior trademark rights dating back to 2016, thereby establishing priority over VPR's Alleged ELF Mark by more than a year.

61.     The goods in Class 34 identified in the '616 Registration are identical and/or closely related to the goods distributed in U.S. commerce by Imiracle and its predecessors since 2016.

62.     The mark depicted in the '616 Registration so resembles the marks previously used by Imiracle's predecessors in interest in connection with goods distributed by Imiracle as to be likely, when used in connection with VPR's goods, to cause confusion, deception, or mistake as to the affiliation, connection, or association of VPR with Imiracle, and/or the origin, sponsorship, or approval of VPR's goods or commercial activities by Imiracle under 15 U.S.C. § 1052(d).  The aforesaid likelihood of confusion will damage Imiracle within the meaning of 15 U.S.C. § 1063.

63.     Imiracle is being damaged by the registration of VPR's mark because VPR has sought and obtained a preliminary injunction against Imiracle's U.S. distributors, and is seeking in this matter to enjoin Imiracle from selling ELFBAR™ products and damaging Imiracle's legitimate business interests.

64.     Accordingly, Imiracle respectfully seeks cancellation of the '616 Registration in accordance with 15 U.S.C. § 1119.

## COUNT III
### (Cancellation of U.S. Trademark Registration No. 5,486,616 for ELF under 15 U.S.C. §§ 1064, 1119, and 1120 based on Fraud Against VPR)

65.     Imiracle incorporates by reference the allegations of Paragraphs 1-52, above, as if fully set forth herein.

66.     VPR attested in sworn declarations in connection with the '884 Application that no other person has the right to use the ELF mark in commerce, that VPR's alleged ELF Mark was in used in connection with all of the goods identified in the '884 Application, and that it was the lawful owner of that mark.

67.     VPR did not disclose to the USPTO that at the time it made those declarations on November 27, 2017, it did not own any trademark rights in and to VPR's alleged ELF Mark.

68.     VPR did not disclose to the USPTO that at the time it made those declarations, any trademark rights in and to VPR's alleged ELF Mark were owned by Clean Vapor.

69.     VPR did not disclosed to the USPTO that at the time it made those declarations, VPR was not using the ELF mark in United States commerce.

70.     VPR knew at the time it submitted these sworn declarations that VPR did not own the mark depicted in the application and that it not been used in United States commerce in connection with the sale of such goods.

71.    VPR knew the materiality of these omitted facts.

72.    Upon information and belief, VPR's false statements and omissions were made knowingly, with the intent to procure and maintain a registration to which VPR was not entitled, VPR was successful in procuring and maintaining such registration, and the USPTO relied on these misstatements by omission.

73.    Imiracle has been significantly injured as a consequence of the foregoing fraudulent declarations or representations and the fraudulently procured registration, which, in turn, has resulted in a substantial fraud on this Court, including, but not limited to, by having all of Imiracle's U.S. distributors enjoined from selling its ELFBAR-branded products in the United States since February 23, 2023, as a result of the Court's preliminary injunction order issued on the basis of VPR's fraudulently procured trademark registration, thus entitling Imiracle to substantial damages sustained as a consequence thereof.

74.    Imiracle is entitled to an award of damages in accordance with 15 U.S.C. § 1120, and VPR's Alleged ELF Registration should be cancelled pursuant to Sections 14(3) and 37 of the Lanham Act, 15 U.S.C. §§ 1064(3), 1119.

## <u>COUNT IV</u>
**(Cancellation of U.S. Trademark Registration No. 5,486,616 for ELF under 15 U.S.C. §§ 1064, 1119, and 1120 based on Lack of Bona Fide Use Against VPR)**

75.    Imiracle hereby incorporates by reference the allegations of Paragraphs 1-52, above, as if fully set forth herein.

76.    VPR repeatedly attested in sworn declarations in connection with the '884 Application dated November 27, 2017, that the Registered Mark had been used in connection with all of the goods cited therein as of November 21, 2017.

77.     Despite these sworn declarations, VPR had not used and was not using its mark in United States Commerce on or in connection with the sale of any or all of the listed items as of any of the dates when VPR made such declarations, under oath.

78.     VPR knew at the time it submitted these sworn declarations that VPR's Mark had not been used in United States commerce in connection with any or all of the items listed in the identification, despite these representations to the Trademark Office.

79.     VPR's Registration is void *ab initio* under Trademark Act § 1(a), 15 U.S.C. § 1051(a) and *Aycock Engineering Inc. v. Airflite Inc.*, 560 F.3d 1350, 90 USPQ2d 1301, 1305 (Fed. Cir. 2009), because there was no bona fide use of VPR's Mark in commerce on the goods identified in the Application prior to the filing date of the '884 Application, rendering the '884 Application, and in turn the '616 Registration, void *ab initio*.

80.     Consequently, Imiracle is entitled to an award of damages in accordance with 15 U.S.C. § 1120, and VPR's alleged ELF Registration should be cancelled pursuant to Sections 14(3) and 37 of the Lanham Act, 15 U.S.C. §§ 1064(3), 1119.

81.     Imiracle reserves the right to amend its Counterclaims to allege additional counts, including for a declaration of invalidity and non-infringement of the '622 Patent, in the event that Imiracle's motion to dismiss VPR's claim for patent infringement is denied.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant / Counterclaim Plaintiff Imiracle (HK) Limited prays that this Court deny Plaintiff / Counterclaim Defendant VPR Brands, LP any relief on its claims and that the Court dismiss VPR's claims and/or enter judgment in Imiracle's favor thereon, and that this Court enter judgment in Imiracle's favor and against both Counterclaim Defendants, specifying as follows:

a.      that VPR's Complaint is dismissed with prejudice;

b.      declaring, adjudging, and decreeing that Counterclaim Plaintiff Imiracle has priority trademark rights in and to the trademark ELF and variations thereof for use in connection with goods in Class 34 concerning electronic cigarettes and accessories therefor;

c.      that Counterclaim Defendants have willfully and deliberately violated 15 U.S.C. § 1125(a), that Imiracle has been damaged by such violations, and that Counterclaim Defendants are jointly and severally liable to Imiracle for such violations;

d.      directing, pursuant to 15 U.S.C. § 1119, the cancellation of U.S. Trademark Registration No. 5,486,616, to be certified by the Court to the Director of the United States Patent and Trademark Office to make an appropriate entry of cancellation upon the records of the United States Patent and Trademark Office;

e.      that Counterclaim Defendants, their affiliates, officers, directors, agents, representatives, and attorneys, and all persons acting or claiming to act on their behalf or under their direction or authority, and all persons acting in concert or participation therewith, be preliminarily and permanently enjoined from using the trademark ELF and/or confusingly similar marks or colorable imitations thereof in connection with the promotion, advertisement, display, sale, or distribution of any goods offered by, though, under, or on behalf of Counterclaim Defendants;

f.      awarding damages, jointly and severally, pursuant to 15 U.S.C. §§ 1117 and 1120 including, but not limited to, all gains, profits, and advantages derived from Counterclaim Defendants' sale of goods in connection with VPR's Alleged ELF Mark and VPR's Alleged ELF Registration, Imiracle's damages and costs, statutory damages and/or treble damages, and punitive damages for Counterclaim Defendants' willful and intentional misconduct.

      g.      awarding Imiracle its costs and disbursements incurred in this action;

      h.      awarding attorneys' fees for violation of the Lanham Act, or as otherwise allowed by law or equity;

      i.      finding that this case is exceptional and awarding to Imiracle all of its costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285;

      j.      awarding interest, including prejudgment and post-judgment interest at the statutory rate; and

      k.      granting such other and additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Imiracle respectfully requests a trial by jury on all issues so triable raised in Plaintiff's Complaint, on Imiracle's affirmative defenses, and on its Counterclaims.

Dated:  April 26, 2023                MCDOWELL HETHERINGTON LLP
                                      Attorneys for Defendants
                                      2385 N.W. Executive Center Drive, Suite 400
                                      Boca Raton, FL 33431
                                      (561) 994-4311
                                      (561) 982-8985 fax


                                      By:  ___s/Tucker C. Motta_____
                                            TUCKER C. MOTTA, ESQ.
                                            Fla. Bar No. 112659
                                            tucker.motta@mhllp.com

                                      Eric N. Heyer (*pro hac vice* forthcoming)
                                      Meixuan (Michelle) Li (*pro hac vice* forthcoming)
                                      Joseph A. Smith (admitted *pro hac vice*)
                                      Anna Stressenger (*pro hac vice* forthcoming)
                                      Krupa A. Patel (*pro hac vice* forthcoming)
                                      THOMPSON HINE LLP
                                      1919 M Street, NW, Suite 700
                                      Washington, DC 20036
                                      Phone: 202.331.8800
                                      Fax: 202.331.8330
                                      eric.heyer@thompsonhine.com
                                      michelle.li@thompsonhine.com
                                      joe.smith@thompsonhine.com
                                      anna.stressenger@thompsonhine.com
                                      krupa.patel@thompsonhine.com

                                      Carrie A. Shufflebarger (*pro hac vice* forthcoming)
                                      THOMPSON HINE LLP
                                      312 Walnut Street, 14th Floor
                                      Cincinnati, OH 45202
                                      Phone: 513.352.6700
                                      Fax: 513.241.4771
                                      carrie.shufflebarger@thompsonhine.com

                                      *Counsel for Imiracle (HK) Limited*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 26, 2023, I electronically filed the foregoing with the Clerk of the

Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Joel B. Rothman, Esq.
Layla T. Nguyen, Esq.
SRIPLAW, P.A.
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
joel.rothman@sriplaw.com
layla.nguyen@sriplaw.com
*Counsel for Plaintiff*

Joseph A. Dunne, Esq.
Admitted *Pro Hac Vice*
SRIPLAW, P.A.
175 Pearl Street, Third Floor
Brooklyn, NY 11201
joseph.dunne@sriplaw.com
*Co-Counsel for Plaintiff*

Leslie J. Lott, Esq.
Ury Fischer, Esq.
Lott & Fischer P.L.
255 Aragon Ave., Third Floor
Coral Gables, FL 33134
ljlott@lottfischer.com
ufischer@lottfischer.com
*Co-Counsel for Ecto World LLC*

Gregory S. Weiss, Esq.
Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A.
505 S. Flagler Drive, Suite 600
West Palm Beach, FL 33401
gweiss@mrachek-law.com
*Co-Counsel for Safa Goods LLC and*
*Counsel for Non-Parties Orange Wholesale LLC,*
*Taher Shriteh, Haitham Shriteh and Ahmed Shriteh*

s/Tucker C. Motta
Tucker C. Motta