UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:22-cv-81576-CANNON-REINHART

| | |
|---|---|
| VPR BRANDS, LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SHENZHEN WEIBOLI TECHNOLOGY | ) |
| CO., LTD., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| IMIRACLE (HK) LIMITED, | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| VPR BRANDS, LP | ) |
| | ) |
| and | ) |
| | ) |
| ELF BRAND LLC, | ) |
| | ) |
| Counterclaim Defendants. | ) |
| | ) |

**DEFENDANT / COUNTERCLAIM PLAINTIFF IMIRACLE (HK) LIMITED'S
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

    I.      FACTUAL BACKGROUND ................................................................ 2

        A.     The Origin of VPR's Alleged ELF Mark ............................... 2

        B.     VPR's '884 Application and '616 Registration ..................... 3

        C.     GD Sigelei's Continuous Use of the ELF mark in United States Commerce Since 2016 ................................................ 4

        D.     Imiracle's ELFBAR Electronic Cigarettes ........................... 5

        E.     GD Sigelei's Recent Assignment of the ELF mark to Imiracle (HK) Limited ...................................................... 6

        F.     VPR's and Elf Brands LLC's Marketing and Sales of Infringing Electronic Cigarette Products ............................. 6

    II.     PROCEDURAL POSTURE ............................................................... 8

LEGAL STANDARD ........................................................................................... 9

ARGUMENT ........................................................................................................ 9

    I.      IMIRACLE IS LIKELY TO SUCCEED ON THE MERITS ............... 9

        A.     VPR Has No Rights in the ELF Mark and its '616 Registration is Void ......................................................... 10

        B.     To the Extent VPR Could Have Any Rights in the ELF Mark, Imiracle Has Priority ............................................ 11

        C.     VPR's Use of the ELF Mark on Identical Goods is Highly Likely to Cause Consumer Confusion ................................. 14

            1.     The "ELF" Mark is Strong ........................................ 15

            2.     The Parties' Marks are Identical ................................ 15

            3.     The Parties' Goods are Identical ............................... 16

            4.     The Parties' Retail Outlets and Consumers are Identical ........... 16

            5.     Similarity of Advertising Media ................................ 16

            6.     VPR and ELF Brand are Intentionally Causing Consumer Confusion ................................................. 17

            7.     Actual Confusion ..................................................... 17

    II.     IMIRACLE IS SUFFERING AND WILL SUFFER IRREPARABLE HARM ................................................................ 18

    III.    THE BALANCE OF HARDSHIPS FAVORS IMIRACLE ............... 19

IV.     THE RELIEF SOUGHT SERVES THE PUBLIC INTEREST .......................... 20

V.     BOND .......................................................................................................................... 20

CONCLUSION ..................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angel Flight of Georgia v. Angel Flight Am.*,
522 F.3d 1200 (11th Cir. 2008) ..................................................................20

*Auto Driveway Franchise Sys., LLC v. Corbett*,
No. 18-cv-4971, 2018 U.S. Dist. LEXIS 231624 (N.D. Ill. July 27, 2018) ...........................19

*Aycock Engineering Inc. v. Airflite Inc.*,
560 F.3d 1350, 90 USPQ2d 1301 (Fed. Cir. 2009) ..................................................11

*BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc.*,
792 F. Supp. 775 (M.D. Fla. 1991) .........................................................18

*C.B. Fleet Co. v. Unico Holdings*,
510 F. Supp. 2d 1078 (S.D. Fla. 2007) ..................................................19

*Carnival Brand Seafood Co. v. Carnival Brands, Inc.*,
187 F.3d 1307 (11th Cir. 1999) ..................................................................12

*Casa Dimitri Corp. v. Invicta Watch Co. of Am.*,
270 F. Supp. 3d 1340 (S.D. Fla. 2017) ..................................................13

*CBC Mortg. Agency v. TMRR, LLC*,
2022 TTAB LEXIS 295 (TTAB Aug. 15, 2022)..................................................11

*Celgene Corp. v. District Pharma*,
No. 17-cv-5303, 2019 U.S. Dist. LEXIS 43264 (D.N.J. Mar. 13, 2019) ...............................19

*Chanel, Inc. v. chanel255.org*,
No. 12-21762-CIV, 2012 U.S. Dist. LEXIS 73894 (S.D. Fla. May 29, 2012)......................20

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*,
931 F.2d 1472 (11th Cir. 1991) ..................................................................10

*Clorox Co. v. Salazar*,
108 USPQ2d 1083 (TTAB 2013) .........................................................11

*E. Remy Martin & Co. v. Shaw-Ross Int'l Imports*,
756 F.2d 1525 (11th Cir. 1985) ..................................................................17

*Ferrellgas Ptnrs., LP v. Barrow*,
143 F. App'x 180 (11th Cir. 2005) .........................................................18

iii

*Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*,
    830 F.3d 1242 (11th Cir. 2016) ...............................................................................15

*FN Herstal SA v. Clyde Armory, Inc.*,
    838 F.3d 1071 (11th Cir. 2016) ......................................................................11, 12

*Gay Toys, Inc. v. McDonald's Corp.*,
    582 F.2d 1067, 199 USPQ 722 (CCPA 1978) .........................................................11

*John H. Harland Co. v. Clarke Checks, Inc.*,
    711 F.2d 966 (11th Cir. 1983) ..............................................................15, 16, 17

*Kingdomworks Studios, LLC v. Kingdom Studios, LLC*,
    No. 19-14238, 2021 U.S. Dist. LEXIS 225018 (S.D. Fla. November 19, 2021) ...................9

*Laboratories Roldan C. pro A. v. Tex Int'l*,
    902 F. Supp. 1555 (S.D. Fla. 1995) ......................................................................13

*Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab.*,
    859 F.3d 1023 (Fed. Cir. 2017)............................................................................11

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*,
    522 F.3d 1211 (11th Cir. 2008) ...........................................................................18

*Ndimbie v. Broward Cty. Hous. Auth., No. 11-CV-60395*,
    2011 U.S. Dist. LEXIS 174656, 2011 WL 13217296 (S.D. Fla. 2011) .................................9

*Perfect Fit. Indus. v. Acme Quilting Co.*,
    618 F.2d 950 (2d Cir. 1980).................................................................................17

*Planetary Motion, Inc. v. Techsplosion, Inc.*,
    261 F.3d 1188 (11th Cir. 2001) ...............................................................10, 12, 13

*Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Florida*,
    546 F. Supp. 987 (S.D. Fla. 1982) .........................................................................17

*PlayNation Play Sys. v. Velex Corp.*,
    924 F.3d 1159 (11th Cir. 2019) .....................................................................14, 16

*Russell Rd. Food & Bev., LLC v. Spencer*,
    829 F.3d 1152 (9th Cir. 2016) ............................................................................12

*RXD Media, LLC v. IP Application Dev. LLC*,
    986 F.3d 361 (4th Cir. 2021) ..............................................................................12

*Select Exp. Corp. v. Richeson*,
    No. 10-80526-CIV-DIMITROULEAS, 2011 U.S. Dist. LEXIS 165333 (S.D.
    Fla. May 5, 2011)...............................................................................................13

*Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*,
    889 F.2d 1018 (11th Cir. 1998) ........................................................................13, 14

*Tancogne v. Tomjai Enterprises Corp.*,
    408 F. Supp. 2d 1337 (S.D. Fla. 2005) ....................................................................20

*Tiramisu Int'l LLC v. Clever Imports LLC*,
    741 F. Supp. 2d 1279 (S.D. Fla. 2010) ....................................................................20

*Turner Greenberg Assocs. v. C & C Imps.*,
    320 F. Supp. 2d 1317 (S.D. Fla. 2004) ....................................................................15

*United Global Media Group, Inc. v. Tseng*,
    112 USPQ2d 1039 (TTAB 2014) ..............................................................................11

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) ....................................................................................................9

*Wreal, LLC v. Amazon.com, Inc.*,
    840 F.3d 1244 (11th Cir. 2016) .................................................................................9

*Wynn Oil Co. v. Thomas*,
    839 F.2d 1183 (6th Cir. 1988) .................................................................................18

**Statutes**

15 U.S.C. § 1064 ...............................................................................................................9

15 U.S.C. § 1116 .........................................................................................................1, 18

15 U.S.C. § 1119 ...............................................................................................................9

15 U.S.C. § 1120 ...............................................................................................................9

15 U.S.C. § 1125 .........................................................................................................9, 10

**Other Authorities**

Fed. R. Civ. P. 65 ...................................................................................................1, 18, 20

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (5th ed.
    2021) .....................................................................................................................12, 15

## INTRODUCTION

As suggested by Defendants' motion to dissolve or vacate, ECF No. 144, much has changed since this Court granted Plaintiff VPR Brands, LP's ("VPR") motion for preliminary injunction on February 23, 2023 ("VPR PI Order"). Indeed, so much has changed since entry of the VPR PI Order, and so many critical new facts have come to light, that Defendant / Counterclaim Plaintiff Imiracle (HK) Limited ("Imiracle") now itself moves for a preliminary injunction pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65 against VPR and its licensee, Counterclaim Defendant Elf Brand LLC ("Elf Brand").

Imiracle bases its motion on three critical grounds. *First*, because of an assignment of priority rights in the ELF mark from a third party, GD Sigelei Electronic Tech Co., Ltd. ("GD Sigelei"), Imiracle now has priority over VPR and Elf Brand. *Second*, deposition testimony of VPR's president, Kevin Frija, taken on April 5, 2023, makes clear that VPR does not now, and has never, actually owned the ELF mark. Indeed, despite repeated representations both to the U.S. Patent and Trademark Office ("PTO") and to this Court to the contrary, VPR was *never* assigned any rights to the ELF mark by the Chinese manufacturer that owned the rights in the ELF-branded products it manufactured for VPR. *Third*, VPR's trademark registration for the ELF mark is *void ab initio*. The registration is void both (i) because VPR did not own the ELF mark when it filed the application to register the mark; and (ii) the ELF mark was not "in use in commerce" by VPR at all, much less exclusively, when VPR submitted its application to register the mark. Both VPR's lack of ownership of the mark and failure to satisfy the use requirement are incurable, fatal defects.

For these reasons, as explained in further detail below, the Court should grant Imiracle's motion and preliminarily enjoin VPR and Elf Brand from, *inter alia*, selling, distributing, advertising, and marketing any electronic cigarette products using any variation of the ELF mark and, as previously requested, *see* ECF No. 144, in conjunction therewith, vacate the VPR PI order.

## BACKGROUND

### I.    FACTUAL BACKGROUND

#### A.    The Origin of VPR's Alleged ELF Mark

VPR is a Florida-based business "engaged in product development for the vaping market, including e-liquids, vaporizers, and electronic cigarettes (also known as e-cigarettes) which are devices that deliver nicotine or cannabis[.]" First Amended Complaint ("FAC"), ECF No. 61, at ¶¶ 10-11. Kevin Frija has been VPR's CEO since early 2016. April 5, 2023 Deposition of Kevin Frija ("Frija Depo."), Exhibit 1 hereto, at 9:24-10:5.

On or about November 21, 2017, Frija received one or more samples of an auto draw mini conceal vaporizer product (the "Clean Vapor Product") from Shenzhen Clean Vapor Technology Co., Limited ("Clean Vapor"), a manufacturer of electronic vaporizers located in Shenzhen, China that VPR had known for less than one year. Frija Depo. at 51:15-54:1. The sample Clean Vapor Product VPR received bore an ELF mark; this was the first time VPR was exposed to the ELF mark. *Id.* Per Frija's testimony, it was Clean Vapor, not VPR, that came up with the ELF mark. *Id*. at 54:2-9. Within a few days of receiving the sample Clean Vapor Product, Frija emailed Clean Vapor to indicate that VPR "love[d] this product with the ELF mark [and] I'm going to send you a contract, *we're going to order it*." *Id*. at 54:10-16; 55:1-5 (emphasis added).

Frija personally drafted an "Exclusive Manufacturing Agreement" with Clean Vapor that was executed on or about November 30, 2017. Frija Depo. 55:6-7; 57:14-22; Exclusive Manufacturing Agreement, Exhibit 8 to Frija Deposition, Exhibit 2 hereto. The Exclusive Manufacturing Agreement did not purport to transfer or assign to VPR any trademark rights in the ELF mark; rather, provided VPR made minimum purchases for a period of one year, the Exclusive Manufacturing Agreement granted VPR "exclusive" rights to use the "Properties" (i.e., patents, trademarks and copyrights) in connection with the "Product." Exclusive Manufacturing

2

Agreement at ¶¶ 1, 3; Frija Depo. at 59:20-60:16. Clean Vapor was a Hong Kong entity that was de-registered on September 11, 2020. *See* Declaration of Eric N. Heyer attached hereto as Exhibit 3 and Hong Kong Companies Registry Record attached thereto. Frija was unsure if Clean Vapor sold the Clean Vapor Product bearing the ELF mark to anyone in the United States prior to selling the Clean Vapor Product to VPR, testifying that "I don't think they did because we asked them. But I don't know for certain. How would I know that? I have no idea." Frija Depo. at 55:25-56:20.

**B.    VPR's '884 Application and '616 Registration**

On November 27, 2017, three days *before* executing the Exclusive Manufacturing Agreement, Mr. Frija, a non-lawyer with no intellectual property background, prepared and filed for VPR U.S. Application Serial No. 87/697884 (the "'884 Application"). Frija Depo at 55:6-7, 57:14-22. The '884 Application sought to register the mark ELF for VPR for use in connection with "Electronic cigarette lighters; Electronic cigarettes; Smokeless cigarette vaporizer pipe" in International Class 34, alleging a date of first use of November 21, 2017, and a date of first use in commerce of November 24, 2027. *See* '884 Application, Exhibit 7 to Frija Deposition, Exhibit 4 hereto.

The '884 Application alleged a date of first use of November 21, 2017—the date VPR received samples of the Clean Vapor Product bearing the ELF mark from Clean Vapor—and a date of first use in commerce of November 24, 20217—the date Frija indicated he began to market the product "by text message." *Id*.; Frija Depo. at 51:24 - 52:7.

At the time Frija filed VPR's application, VPR only had samples of the Clean Vapor Product; the specimen that accompanied the '884 Application to evidence use of the ELF mark was a photograph of those samples. Frija Depo. at 51:6-23. VPR did not possess any quantities of the Clean Vapor Product that it could or did sell other than the samples provided by the

manufacturer at the time VPR filed the '884 Application. *Id*. at 51:17-23. VPR's first sale did not actually occur until sometime in January 2018. *Id*. at 65:6-13.

On June 5, 2018, the '884 Application matured into U.S. Trademark Registration No. 5486616 (the "'616" Registration") in international class 34 for use of the mark ELF in connection with "Electronic cigarette lighters, Electronic cigarettes; Smokeless cigarette vaporizer pipe." FAC at ¶ 16 and Exhibit 1 thereto, ECF 61-1. The '616 Registration lists a date of first use of November 21, 2017, and a date of first use in commerce of November 24, 2017. *Id*.

**C.   GD Sigelei's Continuous Use of the ELF mark in United States Commerce Since 2016**

GD Sigelei Electronic Tech Co. Ltd. is a Chinese company that introduced a line of electronic cigarette components under a sub-brand called "ELF" in April 2016—a year and a half before VPR first received any sample Clean Vapor Product. *See* Declaration of Junbiao Ou ("Ou Decl."), ECF Nos. 107, 113-1, 113-2, at ¶¶ 14, 16 and Exhibit A thereto, ECF 107-1. As explained in detail in pages 4 - 7 of Defendants' motion to dissolve or vacate the VPR PI Order and the supporting declarations thereto, ECF Nos. 144 – 144-8, which Imiracle incorporates by reference herein, since that time, GD Sigelei has continuously used the ELF mark on electronic cigarette products in United States commerce, including through (i) its direct marketing and sales of electronic cigarette components and parts branded with the ELF mark to U.S. distributors and retailers; (ii) marketing and sales of those same products by U.S. distributors of vaping products, including Distributor Defendants Ecto World LLC ("Ecto World") and D&A Distribution, LLC ("D&A"); (iii) marketing and sales of electronic cigarette components branded with the ELF mark by IPV Technology Co., Ltd., which products were manufactured and sold under a written Authorization and license granted by GD Sigelei; and (iv) marketing and sales of the ELF-branded products by IPV Technology Co., Ltd.'s U.S. customers.

### D.      Imiracle's ELFBAR Electronic Cigarettes

For its part, Imiracle (HK) Limited is an affiliate of Defendant Weiboli that, until this Court's entry of the VPR PI Order, had sold ELFBAR-branded electronic cigarette products in the United States since approximately April 2022. *See* Declaration of Xie Jihui, Doc. No. 144-3, at ¶¶ 5-6. Prior to that time, ELFBAR-branded electronic cigarettes were sold to U.S. customers by Defendant Heaven Gifts International Limited ("Heaven Gifts"). *Id*. at ¶ 6. Heaven Gifts is also an affiliate of Imiracle and a subsidiary of a fourth affiliated entity, Shenzhen Imiracle Technology Co. Ltd. ("Shenzhen Imiracle"). *Id*., ¶ 5.

Imiracle's ELFBAR-branded electronic cigarettes, including a disposable electronic cigarette, are widely recognized within the United States and internationally. *Id.* ¶ 7. Imiracle's ELFBAR-branded products are one of the leading products in the electronic cigarette industry, known for their dependability and high quality. *Id.* ¶ 8. Since entering the United States market, Imiracle and Heaven Gifts worked hard to establish the ELFBAR brand as representing a premier disposable electronic cigarette by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior vaping experience. *Id.* ¶ 9. Imiracle, and, before it, Heaven Gifts, expended substantial time, money, and other resources in advertising and otherwise promoting its ELFBAR-branded electronic cigarettes and developing customer recognition and awareness of the brand, including via point of purchase materials, displays, websites, and attending industry trade shows. *Id.* ¶¶ 10, 11.

Imiracle and Heaven Gifts sold ELFBAR-branded electronic cigarettes to authorized master distributors across the United States, including the Distributor Defendants. *Id*., ¶ 12. As a result of the popularity and recognition of Imiracle's ELFBAR-branded electronic cigarettes, Imiracle has faced numerous counterfeiters and knock offs. *Id.* ¶ 13.

### E.     GD Sigelei's Recent Assignment of the ELF mark to Imiracle (HK) Limited

On February 24, 2023, VPR filed a lawsuit against GD Sigelei alleging trademark infringement for its use of the ELF mark. *VPR Brands LP v. Shenzhen Sigelei Technology Co., Ltd., et al.*, Civil Action No. 9:23-cv-80291-AMC (S.D. Fla.). In March 2023, after the Court entered the VPR PI Order and Imiracle became aware of VPR's lawsuit against GD Sigelei and that GD Sigelei had, in fact, been using the ELF mark in United States commerce long before VPR first did so, Imiracle and GD Sigelei entered into a Trademark Assignment Agreement and First Amendment thereto (collectively, the "Assignment Agreement"). *See* Declaration of Shengwei Zhang ("Zhang Decl."), ECF No. 144-4, at ¶¶ 5-6 and Exhibits A and B thereto.

Under the Assignment Agreement, GD Sigelei assigned to Imiracle its full right, title, and interest in the ELF mark, along with the goodwill of the business in connection with which the ELF mark is used and which is symbolized by the ELF mark. Assignment Agreement, Exh. A to Zhang Decl., at §1(a). The Assignment Agreement gives Imiracle the right to stand fully and entirely in the place of GD Sigelei in all matters related to the ELF mark. *Id.* As part of the Assignment Agreement, Imiracle also licensed use of the mark ELF TANK back to GD Sigelei for use in conjunction with Sigelei's sales of electronic cigarettes in the United States. *See* First Amendment to Assignment Agreement, Exh. B to Zhang Decl., § 4.

### F.     VPR's and Elf Brands LLC's Marketing and Sales of Infringing Electronic Cigarette Products

VPR markets two product lines using the ELF mark: (1) the ELF Original Auto Draw Conceal Kit, which VPR describes as a "reusable (non-disposable) bar-shaped e-cigarette featuring a buttonless design, high-capacity battery, and a high-end aluminum body," FAC at ¶¶ 21-24 and Exhibit 2 thereto; and (2) "high capacity e-cigarette batteries designed to be connected to industry standard refillable 510 mouthpieces," *id.*, ¶ 24.

6

In January 2023, Imiracle learned VPR was advertising a new disposable electronic cigarette, the "ELF VPR 5000 Ultra", as "coming soon" and had launched a website, "ELFBrand.com" to promote the upcoming product. Xie Declaration, ECF No. 144-3, at ¶ 14. At that time, however, Imiracle did not hear of any actual sales or actions to actively promote or sell the product. In March 2023, Imiracle learned that another disposable electronic cigarette called the "ELF VPR 7000 Ultra" was being marketed as "coming soon" and advertised on ELFBrand.com as a VPR Brands-licensed electronic cigarette. *Id.* at ¶ 15-16. Imiracle continued to monitor the ELFBrand.com website and consult its distributors to determine whether the "ELF VPR 7000 Ultra" disposable electronic cigarette was being sold. *Id.* at ¶ 17.

In March 2023, Imiracle discovered that a product brochure had been uploaded to the ELFBrand.com website showing the forthcoming "ELF VPR 7000" disposable electronic cigarette. *Id*. at ¶ 18 and Exhibit A thereto. On or about April 3, 2023, an updated brochure, or at least a brochure with an electronic file name indicating it was an updated brochure, was uploaded to the "ELFBrand.com" website. *Id.* at ¶ 19 and Exhibit B thereto. The "ELF VPR 7000 Ultra" disposable electronic cigarette mimics the shape, coloring, and style of Imiracle's ELFBAR electronic cigarette as shown below:



The ELF VPR 7000 Ultra is advertised in the product brochure as available in twelve flavors identical to flavors in which Imiracle's ELFBAR electronic cigarettes are manufactured

and, until February 23, 2023, were sold in the United States. Xie Decl., ECF No. 144-3, at ¶ 21. The brochure also advertises the ELF VPR 7000 Ultra as $5 to $8 cheaper than the typical historical retail price in the United States of ELFBAR electronic cigarettes. *Id.* ¶ 22. The ELF VPR 7000 Ultra disposable electronic cigarette is intended to directly compete with Imiracle's ELFBAR products and seeks to capitalize on the customer recognition and goodwill established by the ELFBAR brand with the same customers in the same market. *Id.* ¶ 23.

VPR has entered into an exclusive license with Counterclaim Defendant Elf Brand LLC to sell VPR's disposable electronic cigarette product. Frija Depo at 76:7-12. Elf Brand LLC is responsible for the distribution and sale of VPR's ELF disposable electronic cigarette. *Id*. at 74:19-78:7. This aligns with the website for the "ELF VPR 7000 Ultra" being "ELFBrand.com." Because VPR's "ELF VPR 7000 Ultra" is a copy of Imiracle's ELFBAR, if the Court vacates the VPR PI Order, VPR's new product will compete directly with Imiracle's ELFBAR disposable electronic cigarettes, competing for the same customers and taking market share from Imiracle.

## II.     PROCEDURAL POSTURE

After the Court entered the VPR PI Order on February 23, 2023, ECF No. 83, VPR's separate lawsuit against Imiracle and Heaven Gifts, Case No. 9:22-cv-81977, was transferred to this Court and consolidated with this case. ECF No. 142.

There is currently pending another motion filed by VPR for a preliminary injunction against Imiracle and Heaven Gifts that the Court has set for an evidentiary hearing on May 26, 2023. ECF No. 155. On April 24, 2023, Defendants also moved to dissolve or vacate the VPR PI Order. ECF No. 144. On April 26, 2023, Imiracle filed a partial answer and counterclaim against VPR and Elf Brand LLC asserting claims for trademark infringement, unfair competition, and false

designation of origin under 15 U.S.C. § 1125(a)(1)(A) and to cancel VPR's '616 Registration under 15 U.S.C. §§ 1064, 1119, and 1120 based on priority, fraud, and lack of bona fide use.[1]

## LEGAL STANDARD

To obtain a preliminary injunction, a movant must demonstrate: (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)). A movant is not required to prove its case in full at the preliminary injunction stage. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Courts have broad discretion to grant preliminary injunctions. *See Ndimbie v. Broward Cty. Hous. Auth., No. 11-CV-60395*, 2011 U.S. Dist. LEXIS 174656, 2011 WL 13217296, at *1 (S.D. Fla. 2011) (citing *Sierra Club v. Georgia Power Co.*, 180 F.3d 1309, 1310 (11th Cir. 1999)).

## ARGUMENT

### I.     IMIRACLE IS LIKELY TO SUCCEED ON THE MERITS

Imiracle is likely to succeed on the merits of its trademark infringement, unfair competition and false designation of origin counterclaims against VPR and Elf Brand under the Lanham Act. To succeed on a claim of trademark infringement, a plaintiff must show (1) that its mark has priority; (2) defendant used the plaintiff's mark in commerce; and (3) defendant's mark is likely to cause consumer confusion. *Kingdomworks Studios, LLC v. Kingdom Studios, LLC*, No. 19-14238, 2021 U.S. Dist. LEXIS 225018, **31-32 (S.D. Fla. November 19, 2021) (citing *Frehling*

---

[1] Given the overlapping issues posed by VPR's pending motion for preliminary injunction, Defendants' motion to dissolve or vacate the VPR PI Order, and this motion, in the interests of efficiency and judicial economy, Defendants intend to file a separate motion to hold a single evidentiary hearing on all three motions that VPR has indicated it does not oppose.

*Enterprises, Inc. v. Int'l Select Group, Ind.*, 192 F.3d 1330, 1335 (11th Cir. 1999)). Similarly, to prove false designation of origin under 15 U.S.C. § 1125, a plaintiff "must show (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001). The same analysis applies to claims for unfair competition. *See Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991). The facts support finding in favor of Imiracle on all claims and entering a preliminary injunction against VPR and Elf Brand.

### A.    VPR Has No Rights in the ELF Mark and its '616 Registration is Void

As a first-level matter, Imiracle has a strong likelihood of success on the merits because VPR does not have any rights to the ELF mark. Rather, the rights VPR claims belong instead to Clean Vapor. The "Exclusive Manufacturing Agreement" did not purport to assign to VPR any trademark rights Clean Vapor (a now-defunct entity) may have possessed in any ELF mark or any associated goodwill. Without such an assignment, the rights to any ELF mark and accompanying rights and goodwill, if any existed, that resulted from VPR's sales of the products using the ELF mark inured to the benefit of Clean Vapor.

As noted in the U.S. PTO's Trademark Manual of Examining Procedure:

> A distributor, importer, or other distributing agent of the goods of a manufacturer or producer does not acquire a right of ownership in the manufacturer's or producer's mark merely because it moves the goods in trade. *See In re Bee Pollen from Eng. Ltd.*, 219 USPQ 163 (TTAB 1983); *Audioson Vertriebs - GmbH v. Kirksaeter Audiosonics, Inc.*, 196 USPQ 453 (TTAB 1977); *Jean D'Albret v. Henkel-Khasana G.m.b.H.*, 185 USPQ 317 (TTAB 1975); *In re Lettmann*,183 USPQ 369 (TTAB 1974); *Bakker v. Steel Nurse of Am. Inc.*, 176 USPQ 447 (TTAB 1972). ***A party that merely distributes goods bearing the mark of a manufacturer or producer is neither the owner nor a related-company user of the mark.***

T.M.E.P. § 1201.06(a) (emphasis added). Because the relationship between VPR and Clean Vapor was purely an arm's length manufacturer-distributor relationship and Clean Vapor's pre-existing

rights were merely exclusively licensed, but not assigned, to VPR, Clean Vapor was always the owner of the rights in and to the ELF mark that VPR claimed for itself. *See, e.g.*, *Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab.*, 859 F.3d 1023, 1027 (Fed. Cir. 2017) ("[R]egistration by one who did not own the mark at the time of filing renders the underlying application void *ab initio*.") (citations omitted); *CBC Mortg. Agency v. TMRR, LLC*, 2022 TTAB LEXIS 295, **21-22 (TTAB Aug. 15, 2022) ("Only the owner of the mark may file an application to register it. Thus, an application filed by one who is not the owner of the mark sought to be registered is a void application.") (citations and internal quotations omitted).

Additionally, because VPR did not actually have possession of any goods to sell (other than samples) and had not sold any ELF-branded products at the time it filed the '884 Application (which was a use-based application), VPR did *not* have actual use of the ELF mark in commerce. VPR's '616 Registration was thus procured by fraud and is void *ab initio*.[2]

### B.   To the Extent VPR Could Have Any Rights in the ELF Mark, Imiracle Has Priority

As a second-level matter, to the extent VPR could have any rights in the ELF mark (which Imiracle contends it does not), Imiracle has priority, rendering VPR the junior user of the mark. "Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users." *FN Herstal SA v. Clyde Armory, Inc.*, 838 F.3d 1071, 1080-81 (11th Cir. 2016) (quoting *Hana Fin., Inc. v. Hana*

---

[2] *See, e.g. Aycock Engineering Inc. v. Airflite Inc.*, 560 F.3d 1350, 90 USPQ2d 1301, 1305 (Fed. Cir. 2009) (holding registration of a mark that does not meet the use requirement is void *ab initio*); *Gay Toys, Inc. v. McDonald's Corp.*, 582 F.2d 1067, 199 USPQ 722, 723 (CCPA 1978) (holding that because applicant did not use the mark in commerce in association with the goods at the time it filed the application, its application was void); *United Global Media Group, Inc. v. Tseng*, 112 USPQ2d 1039, 1044-46 (TTAB 2014) (holding application void *ab initio* for nonuse in connection with services); *Clorox Co. v. Salazar*, 108 USPQ2d 1083, 1086-87 (TTAB 2013) (holding applicant's mark not in use in commerce as of filing date of use-based application).

*Bank*, 574 U.S. 418, 419 (2015)). A party claiming prior use must produce evidence of "first, adoption and second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Id.* (quoting *Planetary Motion,* 261 F.3d at 1193). The sale of goods bearing the mark is typical evidence of use in commerce, but, absent actual sales, advertising, publicity, and solicitation can sufficiently meet the public identification prong of the test. *Id.* (citing *Planetary Motion*, 261 F.3d at 1195-96).

      Significantly for Imiracle, priority is assignable; a party who purchases a trademark inherits the seller's date of first use, and with it the seller's priority. *See Carnival Brand Seafood Co. v. Carnival Brands, Inc.*, 187 F.3d 1307, 1310 (11th Cir. 1999) (noting that "an assignee of a trademark steps into the shoes of the assignor"); *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 371 (4th Cir. 2021) ("A party can become a senior user of a mark by acquiring from a previous owner an assignment of rights."); *see also* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:15 (5th ed. 2021) ("All courts follow the rule that . . . after a valid assignment, the assignee acquires all of the legal advantages of the mark that the assignor enjoyed, including priority of use."). Because an assignee of a trademark steps into the shoes of the assignor, a party whose use is otherwise junior to a rival may buy the trademark and associated goodwill of a third party with an earlier priority date to pre-date the priority of the rival. *Carnival*, 187 F.3d at 1310 (citing McCarthy on Trademarks and Unfair Competition § 16:5, at 16-7 & n.3 (1998)); *Russell Rd. Food & Bev., LLC v. Spencer*, 829 F.3d 1152, 1156 (9th Cir. 2016) ("It is beyond dispute that a trademark owner may assign his trademark."). Such assignments of rights from a third party are valid to establish priority over a rival even when the assignee acquires its rights during litigation with that rival. *See Planetary Motion*, 261 F.3d at 1200-01.

Here, GD Sigelei began using the ELF mark in April 2016 when it first advertised sales of its ELF electronic cigarette components and parts to distributors in the United States, more than one year before VPR's actual first use in 2018. GD Sigelei continued to sell electronic cigarette products under the ELF mark from 2016 to present, including by its own direct sales, through authorized U.S. distributors and retailers, and pursuant to its authorization and licensing of the ELF Mark to IPV and sales of IPV's products by U.S. distributors. GD Sigelei's actions and sales constitute continuing use in commerce, as required to maintain rights in the ELF mark and priority over VPR. *See Casa Dimitri Corp. v. Invicta Watch Co. of Am.*, 270 F. Supp. 3d 1340, 1357 (S.D. Fla. 2017) (recognizing that a licensee's use of a mark inures to the benefit of the licensor) (citing *Cotton Ginny, Ltd. v. Cotton Gin, Inc.*, 691 F. Supp. 1347, 1354 (S.D. Fla. 1988); *Clayton v. Howard Johnson Franchise Syst., Inc.*, 740 F. Supp. 1553, 1560 (M.D. Fla. 1988)). Similarly, the sales of GD Sigelei's ELF products by Ecto World and D&A constituted use by GD Sigelei, as "what is relevant is who was the actor that placed the product with the mark into commerce . . . [and] [GD Sigelei] placed the mark on the product at the point of production, and was the first to distribute the product into the stream of commerce[.]" *Laboratories Roldan C. pro A. v. Tex Int'l*, 902 F. Supp. 1555, 1566 n.12 (S.D. Fla. 1995); *Select Exp. Corp. v. Richeson*, No. 10-80526-CIV-DIMITROULEAS, 2011 U.S. Dist. LEXIS 165333, at **19-20 (S.D. Fla. May 5, 2011).

Because of its first and continuing use of the ELF mark in connection with electronic cigarette products—the same type of products offered by VPR—GD Sigelei had priority over VPR. *See, e.g., Planetary Motion, Inc.*, 261 F.3d 1188. This priority and GD Sigelei's rights in the ELF mark apply not only to the exact products GD Sigelei sold and authorized, but also "may extend into uses in 'related' products or service markets . . . [t]hus, an owner of a common law trademark may use its mark on related products or services and may enjoin a junior user's use of

the mark on such related uses." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1137 (11th Cir. 1998). The ELF products sold by GD Sigelei were unquestionably electronic cigarette components and parts, and therefore competitive with VPR's use of ELF in connection with the electronic cigarette components VPR sold. *See* FAC ¶¶ 15, 27, 29-30; *Tally-Ho*, 889 F.2d at 1023.

Imiracle acquired GD Sigelei's prior use, along with all other rights in the ELF mark, through the Assignment Agreement in March 2023. Thus, Imiracle has priority over VPR, which lacks any valid ownership interest or rights in the ELF mark in any event, and procured the '616 Registration by fraud. Imiracle likewise has priority over VPR's licensee, Elf Brand.

### C.  VPR's Use of the ELF Mark on Identical Goods is Highly Likely to Cause Consumer Confusion

The Court weighs seven factors in determining whether VPR's and Elf Brand's use and planned use of the ELF mark is likely to cause consumer confusion: (1) the strength of the ELF trademark used by Imiracle, (2) the similarity of the parties' marks, (3) the similarity of the products the marks represent, (4) the similarity of the parties' retail outlets and consumers, (5) the similarity of advertising media, (6) the defendant's intent, and (7) actual confusion. *PlayNation Play Sys. v. Velex Corp.*, 924 F.3d 1159, 1166 (11th Cir. 2019).

VPR's and Elf Brand's use of the ELF mark on their nearly identical electronic cigarettes is highly likely to cause consumer confusion. VPR cannot disagree since it affirmatively alleges in its First Amended Complaint, and argued in its motion for preliminary injunction, that the parties' simultaneous use of the ELF mark on electronic cigarettes is likely to cause confusion. VPR's argument was based on only the two then-available VPR ELF-branded electronic cigarette products, neither of which was disposable. Consumer confusion will only be exacerbated by VPR and ELF Brand's launching of their new ELF *disposable* electronic cigarette that unabashedly mimics Imiracle's disposable ELFBAR electronic cigarette in its shape, appearance, and function.

1.    **The "ELF" Mark is Strong**

Whether a mark is strong looks at both a mark's conceptual strength and its commercial strength. *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.,* 830 F.3d 1242, 1258 (11th Cir. 2016). "Conceptual strength" evaluates a mark's placement on the generic-to-arbitrary spectrum of marks, whereas commercial strength measures the marketplace's recognition value of the marks. *See* 2 McCarthy on Trademarks and Unfair Competition § 11:81. An "arbitrary mark is generally considered strong and is given protection over a wide range of related products and variations in appearance of the mark." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 974 (11th Cir. 1983).

As VPR argued in its motion for preliminary injunction, ECF No. 20, ELF is an arbitrary mark deserving of the greatest scope of trademark protection, as it has no other significance in the electronic cigarette industry. Imiracle chose the arbitrary and unique ELF mark for its ELFBAR product line to distinguish its products from other electronic cigarette products on the market. Therefore, the conceptual strength of the arbitrary ELF mark weighs in favor of Imiracle.

Likewise, Imiracle's ELF mark is commercially strong. Imiracle's sales of its ELF-branded electronic cigarettes dwarf VPR's sales, as detailed in the declarations and testimony submitted as part of the record on VPR's earlier motion for preliminary injunction, which showed sales by two ELFBAR master distributors alone exceeded $100 million in 2022, while VPR admitted its sales of ELF products were "paltry." Dec. 1, 2022 Hrg. Tr. at 126:8-16; ECF Nos. 58-18, 58-19.

As Imiracle's ELF mark is both conceptually and commercially strong, this factor weighs in favor of Imiracle.

2.    **The Parties' Marks are Identical**

Likelihood of confusion is greater when an infringer uses the exact trademark. *See Turner Greenberg Assocs. v. C & C Imps.*, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004). VPR concedes

that the parties' marks are identical. *See* ECF No. 20 at 12-13. Therefore, the similarity of marks factor also supports Imiracle.

### 3.      The Parties' Goods are Identical

"The greater the similarity between the products and services, the greater the likelihood of confusion. In this case, the products are virtually identical." *John H. Harland Co.*, 711 F.2d at 976 (internal citations omitted). VPR concedes this point, having argued that even its prior goods were identical. *See* ECF No. 20 at 13. This similarity is even more pronounced with VPR and Elf Brand's launch of their new electronic cigarette which, like Imiracle's products, is a nicotine-containing disposable product offered in flavors identical to Imiracle's product that is ready-to-use for consumers. This factor also weighs in favor of Imiracle.

### 4.      The Parties' Retail Outlets and Consumers are Identical

VPR concedes that the sales channels and consumers of the parties' products overlap, *see* ECF No. 20 at 13, with both parties selling their products through at least one of the same marketing channels, the internet, and in the same geographical distribution areas within the United States. Moreover, the parties' ultimate consumers, particularly in the case of the disposable ELF VPR 7000 Ultra, are identical – users of nicotine-containing disposable electronic cigarettes. This factor also supports Imiracle.

### 5.      Similarity of Advertising Media

VPR has alleged and argues that the parties have overlapping advertising channels, including online. *See* ECF No. 20 at 14. In addition to the original website referenced in VPR's motion, VPR and Elf Brand also now advertise and market their ELF products through Elfbrand.com. The similarity of advertising and marketing channels supports the likelihood of confusion. *See, e.g.*, *PlayNation Sys.*, 924 F.3d at 1168-69.

6.     **VPR and ELF Brand are Intentionally Causing Consumer Confusion**

"[If] a [party] can show that a [party] adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone may be sufficient to justify the inference that there is confusing similarity." *John H. Harland Co.*, 711 F.2d at 977. VPR and ELF Brand unquestionably had actual knowledge of Imiracle's use of the ELF mark yet, despite this knowledge, decided to design and launch, in the ELF VPR 7000 Ultra, a pre-filled, disposable electronic cigarette that utilizes the ELF mark and also mimics Imiracle's ELFBAR products in nearly every respect, including shape, size, and flavors, thereby attempting to exacerbate consumer confusion and arrogate to themselves Imiracle's consumer goodwill. *See Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Florida*, 546 F. Supp. 987, 996 (S.D. Fla. 1982) ("Intentional copying of another's trademark is *prima facie* evidence both that the mark has a secondary meaning, and that the imitation is likely to confuse consumers."); *Perfect Fit. Indus. v. Acme Quilting Co.*, 618 F.2d 950, 954-55 (2d Cir. 1980). This factor also supports a likelihood of confusion.

7.     **Actual Confusion**

Imiracle is filing this motion before (to Imiracle's knowledge) VPR and ELF Brand initiate actual sales of their new ELF disposable electronic cigarette to prevent or limit consumer confusion before it occurs. Accordingly, to Imiracle's knowledge, there has not yet been an opportunity for actual confusion from VPR's and ELF Brand's new product. Regardless, it is well established that evidence of actual confusion is unnecessary to prove likelihood of confusion. *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports*, 756 F.2d 1525, 1529 (11th Cir. 1985). This should be especially so when the additional infringing product has not yet been sold and thus no opportunity for confusion has arisen. If VPR's ELF disposable electronic cigarette is actually available for sale prior to the evidentiary hearing on this motion, Imiracle will present any evidence it has gathered of actual confusion at the hearing on the motion itself.

17

## II.      IMIRACLE IS SUFFERING AND WILL SUFFER IRREPARABLE HARM

Once a party "establishes a likelihood of success on the merits of a trademark infringement claim" there is a "presumption of irreparable harm."[3] Even without the presumption, irreparable harm is likely. Irreparable injury includes "loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of injury." *Ferrellgas Ptnrs., LP v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (quoting *Pappan Enters, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. . . . A [party] need not show that the infringer acted in such a way as to damage the reputation of the [party]. It is the loss of control of one's reputation by the adoption of a confusingly similar mark that supplies the substantial threat of irreparable harm." *Id.* at 190-191.

Imiracle is threatened with imminent harm. VPR has been selling infringing electronic cigarettes and now intends to launch a new line of pre-filled, disposable electronic cigarettes that are nearly identical in appearance to Imiracle's ELFBAR products while using the infringing ELF mark. Imiracle has no control over the quality or nature of VPR's products. Yet, because VPR and Elf Brand are using the ELF mark on nearly identical goods, consumers will associate VPR's products with Imiracle's ELFBAR products. *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1191 (6th Cir. 1988). Consumers dissatisfied with VPR's ELF products will naturally blame Imiracle and forego purchasing its ELFBAR products, or post negative feedback and reviews online.

---

[3] *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008); *see BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 784 (M.D. Fla. 1991) ("The law is well settled that the existence of a likelihood of confusion constitutes irreparable injury, as a matter of law, sufficient to satisfy the requirements of Federal Rule of Civil Procedure 65."); *see also* 15 U.S.C. § 1116 ("A [party] seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits . . . in the case of a motion for preliminary injunction.").

Because VPR is launching its identical ELF disposable products while Imiracle and its distributors are still subject to the VPR PI Order, Imiracle and its distributors' losses of existing and prospective customers and associated goodwill will be exacerbated. Imiracle's distributors have already experienced substantial customer losses as a result of the injunction. *See* ECF Nos. 144-1, 144-6, 144-7, 144-8. With VPR's copycat disposable product available, consumers will turn to this imitation product, rather than await the dissolution of the injunction, further eroding Imiracle's market share. *See C.B. Fleet Co. v. Unico Holdings*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) (observing that "loss of market share is more than sufficient to establish irreparable harm"). The resulting losses of market share and sales will be difficult to quantify and thus cannot be adequately compensated through monetary relief.[4]

## III.    THE BALANCE OF HARDSHIPS FAVORS IMIRACLE

Unlike the incalculable and permanent irreparable harm Imiracle would suffer as set forth above, VPR and Elf Brand would suffer no serious injury if enjoined. VPR's sales of its existing ELF-branded products were "paltry" and already on the decline. Dec. 1, 2022 Hrg. Tr. at 126:8-16; No. 18, 2022 Hrg. Tr. at 87, 92. Additionally, because Imiracle seeks this injunction before VPR and Elf Brand begin substantial sales of their ELF-branded disposable electronic cigarette, they will not be forced to abandon or destroy product already available in commerce. In any event, the injunction would only require VPR and Elf Brand to comply with the law, and an infringing party that has no right to use a mark cannot suffer "legitimate hardship by being forced to stop that

---

[4] *See e.g.*, *Auto Driveway Franchise Sys., LLC v. Corbett*, No. 18-cv-4971, 2018 U.S. Dist. LEXIS 231624, at *4 (N.D. Ill. July 27, 2018) ("The competitive harm caused by consumer confusion is difficult to calculate and, as a result, money damages at the end of a case are not adequate."); *Celgene Corp. v. District Pharma*, No. 17-cv-5303, 2019 U.S. Dist. LEXIS 43264, at *13 (D.N.J. Mar. 13, 2019) ("Irreparable injury is often found in trademark infringement claims, because damages are difficult to quantify and impairment of the trademark holder's business good will and reputation is manifest.").

which it had no right to do." *Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1288 (S.D. Fla. 2010).

## IV.    THE RELIEF SOUGHT SERVES THE PUBLIC INTEREST

The public interest in preventing consumers from being misled by VPR and Elf Brand's products in the marketplace also supports a preliminary injunction. *Angel Flight of Georgia v. Angel Flight Am.*, 522 F.3d 1200, 1209 (11th Cir. 2008); *Chanel, Inc. v. chanel255.org*, No. 12-21762-CIV, 2012 U.S. Dist. LEXIS 73894, at **15-16 (S.D. Fla. May 29, 2012) (citing *Nike, Inc. v. Leslie*, 227 U.S.P.Q. 574, 575 (1985)).

## V.    BOND

The court has discretion to issue a preliminary injunction without requiring security, despite the language of Rule 65(c). *See Tancogne v. Tomjai Enterprises Corp.,* 408 F. Supp. 2d 1337, 1252 (S.D. Fla. 2005). Imiracle has already suffered substantial financial losses from the injunction entered previously and only a minimal bond of $500,000 was required. Given the losses already suffered by Imiracle, and minimal, or non-existent, sales or potential losses to VPR, Imiracle asks the Court to waive the bond requirement or only require a *de minimis* bond.

## <u>CONCLUSION</u>

For these reasons, Imiracle (HK) Limited respectfully requests that this Court grant its motion and enter an order preliminarily enjoining VPR Brands LP and Elf Brands LLC.

A proposed form of order is enclosed.

Dated: May 1, 2023                          MCDOWELL HETHERINGTON LLP
                                            Attorneys for Defendants
                                            2385 N.W. Executive Center Drive, Suite 400
                                            Boca Raton, FL 33431
                                            (561) 994-4311
                                            (561) 982-8985 fax

                                            By: ____s/Tucker C. Motta_____
                                                    TUCKER C. MOTTA, ESQ.
                                                    Fla. Bar No. 112659
                                                    tucker.motta@mhllp.com

                                            Eric N. Heyer (*pro hac vice* forthcoming)
                                            Meixuan (Michelle) Li (*pro hac vice* forthcoming)
                                            Joseph A. Smith (admitted *pro hac vice*)
                                            Anna Stressenger (*pro hac vice* forthcoming)
                                            Krupa A. Patel (*pro hac vice* forthcoming)
                                            THOMPSON HINE LLP
                                            1919 M Street, NW, Suite 700
                                            Washington, DC 20036
                                            Phone: 202.331.8800
                                            Fax: 202.331.8330
                                            eric.heyer@thompsonhine.com
                                            michelle.li@thompsonhine.com
                                            joe.smith@thompsonhine.com
                                            anna.stressenger@thompsonhine.com
                                            krupa.patel@thompsonhine.com

                                            Carrie A. Shufflebarger (*pro hac vice* forthcoming)
                                            THOMPSON HINE LLP
                                            312 Walnut Street, 14th Floor
                                            Cincinnati, OH 45202
                                            Phone: 513.352.6700
                                            Fax: 513.241.4771
                                            carrie.shufflebarger@thompsonhine.com

                                            *Counsel for Imiracle (HK) Limited*

21

## **CERTIFICATE OF SERVICE**

I certify that on May 1, 2023, I electronically filed the foregoing with the Clerk of the Court

by using the CM/ECF system which will send a notice of electronic filing to the following:

Joel B. Rothman, Esq.
Layla T. Nguyen, Esq.
SRIPLAW, P.A.
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
joel.rothman@sriplaw.com
layla.nguyen@sriplaw.com
*Counsel for Plaintiff*

Joseph A. Dunne, Esq.
Admitted *Pro Hac Vice*
SRIPLAW, P.A.
175 Pearl Street, Third Floor
Brooklyn, NY 11201
joseph.dunne@sriplaw.com
*Co-Counsel for Plaintiff*

Leslie J. Lott, Esq.
Ury Fischer, Esq.
Lott & Fischer P.L.
255 Aragon Ave., Third Floor
Coral Gables, FL 33134
ljlott@lottfischer.com
ufischer@lottfischer.com
*Co-Counsel for Ecto World LLC*

Gregory S. Weiss, Esq.
Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A.
505 S. Flagler Drive, Suite 600
West Palm Beach, FL 33401
gweiss@mrachek-law.com
*Co-Counsel for Safa Goods LLC and*
*Counsel for Non-Parties Orange Wholesale LLC,*
*Taher Shriteh, Haitham Shriteh and Ahmed Shriteh*

s/Tucker C. Motta
Tucker C. Motta

22